# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **BIJU MAKRUKKATTU JOSEPH , et al** | \* | **CIVIL ACTION NO:** |
| **Plaintiffs** | \* | **1:13-cv-00324** |
| | \* | |
| **v.** | \* | **DISTRICT JUDGE** |
| | \* | **RON CLARK** |
| **SIGNAL INTERNATIONAL, LLC, et al,** | \* | |
| | \* | **MAGISTRATE  JUDGE** |
| **Defendants** | \* | **ZACK HAWTHORN** |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION OF SIGNAL DEFENDANTS
## TO DISMISS PURSUANT TO
## FED. R. CIV. P. 12(b)(6)

Respectfully submitted,

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner*(Pro Hac Vice)*, La. Bar No. 24768
HANGARTNER, RYDBERG, TERRELL & HART, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, LA   70139
Telephone (504) 522-5690
Fax:       (504) 522-5689
ehangartner@hanrylaw.com

Attorneys for Signal International
LLC, Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.

## TABLE OF CONTENTS

**PAGE**

I. **MOTION**……………..………………………………………………………..1

II. **ARGUMENT**………………………………………………………………..1

    *i.*      *Introduction*…………………………………………………………1

           a.     *State Law Claims Implausible*………………………………...……2

    *ii.*     *Allegations*…………………………………………...……………4

    *iii.*    *Source of Applicable Law*……………………………………………7

           a. *Making The Right* **Erie** *Guess*…………………………………...13

           b. *Coca-Cola*…………………………………….......................14

           c. *Morrison*……………………………………………15

    *iv.*    *Just Expectations*………………………………..……..…17

    *v.*     *Dismissal Law after Twombly and Iqbal*………………………….....18

    *vi.*    *Sections 1981 and 1985 Not Extraterritorial*…………………………....20

           a. *No Extraterritorial Intent*…………………………………22

           b. *Section 1985*………………………………………22

III.     **CONCLUSION**………………………………………………...23

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*A.I Trade Finance Inc. v. Petra Int'l*, 62 F.3d 1454, 1463 (D.C.Cir. 1995)…………………12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937,
173 L. Ed. 2d 868 (2009)……………………………………………………………2,10,11,14,18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167
L. Ed. 2d 929 (2007)……………………………………………………1,2,4,9,10,11,14,15

*Boureslan v. Aramco*, 892 F.2d 1271, 1272 (5th Cir. 1990) (en banc)…………………7,12,14

*Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 603
(5th Cir. 2009)…………………………………………………………………….………..…….12

*Carroll v. Jaques*, 927 F. Supp. 216, 219 (E.D.Tex. 1996)……………………………….....8

*Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393,
405 n.2 (5th Cir. 2010) (en banc) (Dennis, J., dissenting)…………………………….…17

*The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671,
684 n. 43 (Tex. 2006) ……………………………………………………………...…7,12,15

*Collins v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 36196, *14-*15
(D.Ariz. March 15, 2003)……………………………………………………………………22

*Crawford v. Bannum Place of Tupelo*, 2014 U.S. App. LEXIS 898, *11 (5th Cir. 2014)..7,13

*David v. Signal Int'l, LLC*, 2012 U. S. Dist. LEXIS 114247, *110
(E.D.La. Jan. 4, 2012)………………………………………………………………..2,4,17,20,21,22

*EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 111 S. Ct. 1227,
113 L. Ed. 2d 274 (1991)……………………………………………………………..7,12

*Highland Crusader Offshore Partners LP v. Lifecare Holdings, Inc*.,
377 Fed. Appx. 422, 425-26 (5th Cir. 2010)…………………………………………...10

*In re: Ford Motor Co. Vehicle Paint Litig.*, 1996 U.S. Dist. LEXIS 11063
(E.D.La. July 30, 1996) (Vance, J.)……………………………………………………8

ii

*Infineon Technologies v. Volterra Semiconductor Corp.*,
2013 U.S. Dist. LEXIS 17501, *4 (N.D.Cal. Feb. 7, 2013)………………….…………….9

*Intelligender, LLC v. Soriano*, 2011 U.S. Dist. LEXIS 26301, *46
(E.D.Tex. March 15, 2011……………………………………………..……..8,9,10

*Intravisual, Inc. v. Fujitsu Microelectronics America, Inc.*,
2011 U.S. Dist. LEXIS 28100, *18 (E.D.Tex. March 18, 2011)………………..……….19

*King v. Marshell*, 2013 U.S. Dist. LEXIS 78326, *2-*3 (E.D.Tex. May 12, 2013)
(Hawthorn, M.J.)……………………………………………………………………...3

*Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S. Ct. 1020,
85 L. Ed. 2d 1477 (1941)……………………………………………………………7,12

*Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)…………………….……….19

*Meats by Linz, Inc. v. Dear*, 2011 U.S. Dist. LEXIS 42800, *12
(N.D.Tex. April 20, 2011)……………………………………………...…………….8

*Morrison v. National Australia Bank, Ltd.*, -- U.S. --, 130 S. Ct. 2869,
177 L. Ed. 2d 535 (2010)…………………………………………….…..2,5,6,15,16

*National Union Fire Ins. Co. v. American Eurocopter Corp.*, 692 F.3d 405, 408
(5th Cir. 2012)…………………………………………………………........................13

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007)………10

*Oasis Research, LLC v. ADRIVE, LLC*, 2011 U.S. Dist. LEXIS 80483,
*8-*9 (E.D.Tex. May 23, 2011)………………………………………………………14,19

*Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 307 (2nd Cir. 2006)……….22

*Thule Drilling ASA v. Schimberg*, 290 Fed. Appx. 745, 746 n. 1 (5th Cir. 2008)………..…10

*Volkswagen, A.G v. Hon. Rogelio Valdez, Judge*, 909 S.W.2d 900, 903 (Tex. 1995)…....12,13

<u>**Other Authorities**</u>

28 U.S.C. § 1367(a)…………………………………………………………........3

42 U.S.C. § 1981……………………………………………………………..passim

42 U.S.C. § 1985……………………………………………………..…………passim

**<u>Rules</u>**

Fed.R.Civ.P. 12(b)(6)…………………………………………………………………passim

## I.    MOTION

Defendants, Signal International, LLC ("LLC"), Signal International, Inc. ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal"), respectfully move, in accordance with Fed. R. Civ. P. 12(b)(6), for the dismissal of the pendent state law claims in the Second Amended Complaint (Doc. #64) ("SAC") relating to fraud, breach of contract and negligent misrepresentation for the following reasons. With regard to state law, the SAC fails to state a claim that is plausible.[1]

Signal likewise moves, on the basis of Rule 12(b)(6), for the dismissal of the § 1981 and § 1985 claims in the SAC, insofar as the claims are based on conduct that occurred abroad. Given their explicit terminology, courts agree that § 1981 and § 1985 are not extraterritorial.

The Court dismissed Signal's pending motion to dismiss (Doc. #24) the First Amended Complaint without prejudice on January 16, 2014 via Doc. #67. Under Fed.R.Civ.P. 12(a)(1)(4)(A) (Lexis 2013), the present motion is timely.

## II.    ARGUMENT

### i.    Introduction

The SAC's common law claims concerning fraud, negligence and breach of contract are extraterritorial and should be dismissed on the basis, accordingly, of their implausibility. *See* Restatement (Second) Conflict of Laws, § 6 (ALI 1971), Comment, Subsection (2) (with regard to common law claims, "courts usually adjudicate[] only with the local situation in mind."). Signal also moves to partially dismiss the SAC with regard to the SAC's § 1981 and § 1985 claims insofar as the claims are based on conduct occurring abroad resulting in the payment,

---

[1] ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level, . . .").

abroad, of fess or expenses based on the extraterritoriality of the resulting claim. As it happens, §§ 1981 and 1985 are territorial organically, facially. ***David***, ***infra***, considered the recruitment fee claim tied to § 1981 extraterritorial, without using that term expressly, in January of 2012. ***See David***, ***infra***, at *120 (expressing a degree of incredulity over claim for damages resulting allegedly from discrimination proscribed by § 1981 arising from a time preceding plaintiffs' arrival at Signal's facilities).

Plaintiffs may claim that Signal's reliance on the extraterritoriality principle is a *non-sequitur* because Congress is not the source of common law claims. They may argue that this disqualifies federal jurisprudence discussing the principle that acts of Congress are presumed not apply extraterritorially. ***See***, ***e.g.***, ***Morrison v. National Australia Bank, Ltd.***, -- U.S. --, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).

The Restatement comment Signal quoted before disposes of that brand of erroneous legal reasoning conclusively. The American Law Institute has reminded everyone that usually, the highest courts of the various states likewise adjudicate with only the local situation in mind. ***See*** Restatement (Second) Conflict of Laws, ***supra***, at § 6, Comment, Subsection (2).

As for whether the plaintiffs are ultimately entitled to win the present argument based on contacts between the present dispute and Mississippi and Texas, Signal scrutinizes that argument below when it dissects ***Morrison***.

### a. State Law Claims Implausible

After ***Twombly***, ***Iqbal*** and their Circuit progeny, "[d]ismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its

face." **See** ***King v. Marshell***, 2013 U.S. Dist. LEXIS 78326, *2-*3 (E.D.Tex. May 12, 2013) (Hawthorn, M.J.) (internal citations omitted).[2]

As evidenced by the SAC and the RICO Fraud Chart attached to Doc. #64 as Exhibit A, the SAC does not include enough facts to state a claim that is plausible on its face with regard to fraud, negligence and breach of contract because the facts that emerge from the face of the FAC paint the picture of claims that are extraterritorial in nature. **See** Doc. #64, ¶ 12 (alleging pendent state law claims "based on state law"); ***Thule***, *infra*, 290 Fed. Appx. at 746 n. 1 (court must consider source of applicable law in response to Rule 12(b)(6) motion when activity forming basis of suit appears to have occurred in foreign settings).[3]

With regard to the civil rights claims under § 1981 and § 1985, the SAC seeks to recover compensatory damages. **See**, **e.g**., Doc. #64 (Fourth Claim for Relief concerning § 1985), ¶ 365 ("Plaintiffs seek all appropriate relief, including declaratory relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial."). In the initial class action from which the present action evolved, plaintiffs

---

[2] "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . [P]laintiff must allege sufficient facts to show more than a speculative right to relief. ***Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face***." (Emphasis added).

[3] ***See***, for example, Doc. #64, ¶ 1 ("In the aftermath of Hurricane Katrina, Plaintiffs and similarly situated workers, a total of approximately 590 Indian men, ***were trafficked into the United States*** through the federal government's H-2B guestworker program to provide labor and services to Defendants Signal International L.L.C., Signal International, Inc., Signal International Texas, L.P., Signal International Texas, G.P. and their affiliates (collectively, "Signal")."). ***See also id***., ¶ 2 ("Plaintiffs bring this action to recover for damages inflicted by Defendant Signal and Signal's recruiters and agents ***operating in India***, ***the United Arab Emirates***, and the United States. Defendants have exploited and defrauded Plaintiffs ***by fraudulently recruiting them to work in the United States*** and effectuating a broad scheme of psychological coercion, threats of serious harm and physical restraint, and threatened abuse of the legal process to maintain control over Plaintiffs.") (emphasis added); ¶ 12 ("The Court has supplemental jurisdiction over the causes of action ***based on state law*** pursuant to 28 U.S.C. § 1367(a), as the state law claims arise out of the same nucleus of operative facts which support the federal claims.") (emphasis added). In the RICO Fraud Chart, Doc. #64-1, ¶ F1 likewise alleges "[t]ransmission of advertisement to *Malayala Manorama* indicating offer of an opportunity for work-based permanent residence in the United States." This allegation is typical of the RICO Fraud Chart from the perspective of extraterritoriality.

maintained that § 1981 and § 1985 enabled them to recover fees paid abroad by the plaintiffs based on alleged violations, abroad, of § 1981 and § 1985.

The Complaint in *David* did not explicitly make this claim, the claim was derived from the lawsuit's allegations concerning § 1981. The SAC makes the same, § 1981 allegations. There is therefore reason to believe that the present action seeks to use §§ 1981 and § 1985 extraterritorially.

The statutes are organically territorial. Signal therefore moves for Order dismissing the complaints partially with regard to § 1981 and § 1985 insofar as the measure of compensatory damages for violations of those statutes encompasses recovery of fees incurred abroad.

### ii.    *Allegations*

"Extraterritorial" means "beyond the limits of a country's territory." ***See*** http://dictionary.reference.com/browse/extraterritorial?s=t. On the face of the SAC, the claims in question arose from facts that occurred beyond the limits of American territory. Therefore, the common law claims are extraterritorial. ***See Twombly***, **supra** (test for evaluating motion to dismiss requires Court to utilize its common sense and judicial experience); ***Thule***, **infra**, 290 Fed. Appx. at 746 n. 1 (court must consider source of applicable law in response to Rule 12(b)(6) motion when activity forming basis of suit appears to have occurred in foreign settings).

The SAC does not include enough facts to state a claim that is plausible on its face with regard to fraud, negligence and breach of contract because the SAC is extraterritorial with regard to common law claims on its face.

The gist of Doc. #64 is that the plaintiffs were induced to travel from India to the United States by false statements that were made to plaintiffs in India either directly by Signal or by agents of Signal. ***See***, ***e.g.***, Doc. #64, ¶¶ 1-9, 373 ("In reliance or reasonable reliance on

Defendants' false and/or negligent representations regarding green cards and employment opportunities, Plaintiffs left their homes and jobs [in] India and other countries and traveled to the United States to work for Defendant Signal.").[4]

    With regard to extraterritoriality, the SAC's foreign basis is massively apparent from the four corners of the SAC and from the exhibit to the SAC. The SAC asserts expressly that the plaintiffs were "trafficked into the United States through the federal government's H-2B . . . program . . . ." *See* Doc. #64, at ¶ 1.[5] It is therefore obvious both that the plaintiffs were "trafficked" into this nation from other nations and that the representations that induced the plaintiffs to enter this country transpired before the plaintiffs arrived in the United States. Causally, no other conception of the SAC is plausible. The claims in question are therefore extraterritorial.

    Greatly deepening the sense that the claims are extraterritorial is the RICO Fraud Chart, Doc. #64's Exhibit A. *See* Doc. #64-1. Also highly indicative, though, of the extraterritorial character of the soil from which the state law claims were harvested are ¶¶ 20 through 66 of the SAC.

---

[4] Taken in context, it would be fatuous for plaintiffs to deny that "the[se] materially false and untrue statements and representations" were made abroad. To mitigate the conclusion that undergirds this motion, plaintiffs therefore allege that the statements in question were orchestrated by Signal. As discussed in text below, the United States Supreme Court's opinion in *Morrison* provides the correct framework for analyzing the dispute between the parties concerning the extraterritorial scope of the common law claims alleged in the SAC. *Morrison v. National Australia Bank, Ltd.*, -- U.S. --, 130 S. Ct. 2869, 2885, 177 L. Ed. 2d 535 (2010) ("Under both provisions it is the foreign location of the *transaction* that establishes (or reflects the presumption of) the Act's inapplicability . . .") (italics in original).

[5] It also alleges, "Defendants' main recruiting agents in India and the United Arab Emirates held Plaintiffs' passports and visas, and threatened, coerced, and defrauded Plaintiffs into paying extraordinary fees for recruitment, immigration processing, and travel." *See* SAC, Doc. #64, at ¶ 4. Also, that before any of Plaintiffs arrived, Signal authorized the use, *abroad*, of "false promises, collection of exorbitant recruiting fees, and strong-arm tactics . . ." *See id.*, at ¶ 5.

Paragraphs 20 through 66 of the SAC allege that each plaintiff was recruited abroad. *See* Doc. #64, ¶¶ 20-66.[6] Therefore, as stated before, it is irrefutable the misrepresentations that allegedly induced the plaintiffs to fly to the United States bounced between persons who were abroad when the alleged fraud in the inducement took place. *Id*.

Paragraph 16 of the SAC affirms explicitly that the plaintiffs in this Court are foreign nationals. Consequently, the plaintiffs were foreign nationals when they were recruited. Therefore, the representations that induced the plaintiffs to travel to the United States were uttered on foreign soil to citizens of foreign countries.[7] Therefore, the underlying claims are extraterritorial.

Below, Signal will use the United States Supreme Court's opinion in *Morrison* to deconstruct the plaintiffs' argument that the common law claims are not extraterritorial because Signal engaged in deceptive conduct in the United States. In *Morrison*, with regard to extraterritoriality, the Supreme Court stressed that a territoriality argument so constructed by plaintiffs misses the key point. *See Morrison*, *infra*, 130 S. Ct. at 2884.

---

[6] *See, e.g.*, Doc. #64, ¶ 66 ("Plaintiff Subburaj Rengasamy ("Rengasamy") was recruited beginning in 2004 from India by Dewan Consultants, Sachin Dewan, Burnett, Pol, J&M and Signal for work in the United States.  After arriving in the United States in February 2007, Rengasamy worked in Signal's Orange, Texas facility.").

[7] *Cf.* Doc. #64, ¶ 306 ("RICO Enterprise I at all relevant times was an ongoing business relationship between all Defendants, and the United States Consular officers in India, with the common purpose of recruiting, *transporting*, providing, processing, and obtaining foreign workers to work on shipyards in the United States, including on Signal's operations in Texas and Mississippi.") (emphasis added); *see also id.*, at ¶ 370 (Fraud and Negligent Misrepresentation) ("Defendants intended that the false statements made by Defendants and/or their agents, employees, and/or representatives would induce Plaintiffs to pay exorbitant fees to the Labor Broker Defendants, Recruiter Defendants, and/or Legal Facilitator Defendants, and *to leave their homes and jobs in India and the United Arab Emirates and travel to the United States* to work for the Labor Broker Defendants and/or Defendant Signal.") (emphasis added); *see id.*, at ¶ 379 (Breach of Contract) ("As set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives, offered to obtain permanent residence and immigration status for Plaintiffs in the United States within 18 to 24 months as well as steady work opportunities in the United States with Defendant Signal and/or Labor Broker Defendants in exchange for Plaintiffs' payment of exorbitant fees to Defendants and their employees, agents and/or representatives and agreement to work for Defendant Signal and/or Labor Broker Defendants.").

In summary, on the face of the SAC, the contention that the state law claims are "based on state law" is therefore implausible. *See* Doc. #64, ¶ 12. A helpful opinion on the same subject is *Boureslan v. Aramco*, 892 F.2d 1271, 1272 (5th Cir. 1990) (en banc), which the Supreme Court later affirmed in *EEOC*, *infra*. In *Boureslan*, the Fifth Circuit referred to the "respect" of American courts for "the right of nations to regulate conduct within their own borders [as] a fundamental concept of sovereignty . . . not lightly [to be] tossed aside." *Id*.

Case law of the Texas Supreme Court validates an *Erie* guess that this action's common law claims are implausible. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 2d 1477 (1941) ("We are of opinion that . . . *Erie* . . . extends to the field of conflict of laws."); *Crawford v. Bannum Place of Tupelo*, 2014 U.S. App. LEXIS 898, *11 (5th Cir. 2014) ("The Mississippi Supreme Court has not spoken directly on this issue so we look to the Mississippi Court of Appeals for guidance in making our Erie guess."); *The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680 (Tex. 2006) (it is especially sensitive for jurisdiction to extend its laws governing economic concerns beyond its own borders).

This motion should therefore be granted.

### *iii.*    *Source of Applicable Law*

Former H-2B workers of Signal like the present plaintiffs have developed the habit of contending that, at this juncture, the question of applicable law and its source has no significance.

At, as they call it, this "early stage," it is wrong, they say, to raise a question about the applicable law and its provenance. In so contending, H-2B workers cite law from beyond the Fifth Circuit.

It is not surprising that they do because demonstrably, the view of courts within the Fifth Circuit is emphatically to the contrary. In, for instance, **Meats by Linz, Inc. v. Dear**, 2011 U.S. Dist. LEXIS 42800, *11-*12 (N.D.Tex. April 20, 2011), another Texas federal court wrote, in response to a Rule 12(b)(6) motion, that the Rule obliged the Judge to evaluate whether the plaintiff had pled a plausible claim. *Id*. The Judge observed that to do this, he would *first* have to consult the law applicable to the claim, which meant determining what that law was.[8] He would then "turn[] to [that] law for guidance," he said, on the issue of plausibility.[9]

In this District, **Intelligender, LLC v. Soriano**, 2011 U.S. Dist. LEXIS 26301, *46 (E.D.Tex. March 15, 2011) also chided lawyers for failing to brief it adequately concerning issues relating to the source and nature of applicable law. **See also**, **e.g.**, **Carroll v. Jaques**, 927 F. Supp. 216, 219 (E.D.Tex. 1996) (carrying out, in response to Rule 12(b)(6) motion, choice of law analysis to determine in malpractice action which state's law governed statute of limitations question).

In **Intelligender**, one of the parties was a Chilean company, FASA; among the motions the Court faced was a Rule 12(b)(6) motion by FASA. **See id.**, at *3. One question concerned a claim for defamation, which implicated, factually, Chilean law, which led the Court to question

---

[8] **See also In re: Ford Motor Co. Vehicle Paint Litig.**, 1996 U.S. Dist. LEXIS 11063 (E.D.La. July 30, 1996) (Vance, J.) (car buyers brought class action against manufacturer and paint companies alleging damages for latent paint defect causing paint on vehicles to peel; after defendants filed motion to dismiss under Rule 12(b)(6), court, noting that federal court, in diversity case, must apply forum state's conflict of law rules, to merits of case, separated car buyers by residence and analyzed all claims for each state, to determine whether each car buyer stated potentially valid claims for relief under various theories).

[9] The defendant was based in Dallas, and there were therefore contacts between the action and Texas. **See id.**, at *2. The suit basically concerned a noncompetition agreement. The plaintiff pointed out that the agreement provided "'[t]his Agreement shall be construed, interpreted and governed in accordance with the laws of Illinois, *without reference to rules relating to conflicts of law*.'" *Id*. (emphasis added). The Court then said, about the analysis in which it would engage, "Therefore, to evaluate whether MBL has pleaded a plausible claim, i.e., whether MBL's customer listings qualify as confidential information, the court turns to Illinois law *for guidance*.") (internal citations omitted and emphasis added). In other words, the Court in **Meats by Linz, Inc**. did precisely what Signal is recommending.

whether the claim was governed by the law of Texas. *See id.*, at *46. The Court said it was "not convinced that Texas law necessarily applies for the defamation claim." *Id*. Added the Court: "But neither party has performed *the necessary* choice of law analysis nor has either party explained how Chilean civil defamation law may apply in this case." *Id*. (emphasis added).

To resolve, after *Twombly*, a Rule 12(b)(6) motion, to which the Court referred explicitly, *see id.*, at *44, the Court proceeded to discuss the applicability of the conflicts rules of the State of Texas. *See id.*, at *46. The Court reviewed the pertinent factors. *Id*. The Court noted the foreign site of a critical event and remarked that foreign law would therefore apply "unless Texas has the more significant relationship." *Id*. Next, the Court regretted the fact that it lacked the information required to carry out the required analysis because the parties had not briefed the Court on those issues, as they should have.[10]

Obviously, therefore, in this case, this District disagreed with the legal point the H-2B workers have tried to advance in this case concerning the alleged irrelevance, at the Rule 12(b)(6) stage, of the source of applicable law.

Ultimately, however, the Court in *Intelligender* rejected the Rule 12(b)(6) argument. *See id.*, at *47-*48. This happened because the party presenting the argument bore the burden of proof on the ultimate issue; the defense was an affirmative defense. *See id.*, at *47. The Court thought that FASA had not briefed its Rule 12(b)(6) motion adequately.

Here, however, the situation is exactly reversed. *See Infineon Technologies v. Volterra Semiconductor Corp.*, 2013 U.S. Dist. LEXIS 17501, *4 (N.D.Cal. Feb. 7, 2013) (since pleader

---

[10] *See id.*, at *47 ("But the Court cannot adequately determine whether Texas has the more significant relationship at this time. The parties have not briefed the choice of law issue. In addition, the Court is unaware of the operation of Chilean defamation law because the parties have not briefed that issue either.").

bears burden of proving its claims, pleader "is required to set forth, in accordance with *Iqbal* and *Twombly*, the parameters of its claims.").

It is indisputable that the plaintiffs have an obligation to prove fraud and negligence and breach of contract theories. Thus, here, the burden falls on them to show the plausibility of their claims. *See Twombly*, *supra*. To do that, as the ***Intelligender*** court perceived, the plaintiffs have to identify and brief, or adequately allege, the applicable law and, if necessary and appropriate, its source. *Id*.

Nor is ***Intelligender*** an anomaly. To the contrary, the Fifth Circuit has observed that such inquiries are appropriate and necessary at this stage in cases such as ***Nationwide Bi-Weekly Admin., Inc. v. Belo Corp***., 512 F.3d 137, 141 (5th Cir. 2007); ***Highland Crusader Offshore Partners LP v. Lifecare Holdings, Inc***., 377 Fed. Appx. 422, 425-26 (5th Cir. 2010) and ***Thule Drilling ASA v. Schimberg***, 290 Fed. Appx. 745, 746 n. 1 (5th Cir. 2008).

***Thule*** is wonderfully instructive. There, in footnote 1, the Court said:

> We . . . apply the choice of law rules of the forum state. The district court provided no discussion relating to choice of law rules, although all of the activity forming the basis of this suit appears to have occurred in foreign settings. Because both parties based their Rule 12(b)(6) arguments on Texas law, we assume that the district court applied Texas law. ***We should note, however, that Texas applies the 'most significant relationship' test for choice of law determinations, which, given the facts underlying this case, adds to our uncertainty about the basis for the district court's decision***.

*See Thule*, *supra*, at 746 n. 1 (internal citations omitted and emphasis added).

Therefore, when plaintiffs promote the view in this litigation that there is no need to examine the source of and the applicable law at this time to answer a plausibility question, plaintiffs promote a view without legal merit. *Id*.

*Twombly* proves conclusively that the argument concerning applicable law notification lacks merit. *Twombly* emphasizes, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise *a right to relief* above the speculative level, . . ."[11] Only law provides a benchmark for measuring the plausibility of a right to relief. *See Twombly*, *supra*, at 555 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" such as "based on state law" – "'will not do.'"). This insight, which other statements in *Twombly* and *Iqbal* demonstrate to be correct, proves that the position the plaintiffs advance, on this issue, is without merit.[12]

Only law allows a Court to comment on the plausibility of the assertion that there may be a right, under certain alleged facts, as a matter of law, to relief. *Id*. This reasoning is so fundamental, it is hard to imagine anyone quarreling with it. *Id*. (on motion to dismiss, Court is under no obligation to accept as true a legal conclusion.

As for the applicable law and its source, the Texas Supreme Court would likely agree with the Fifth Circuit that the state law claims in this litigation are so underpinned by foreign precursors that it violates principles venerated by American law to lightly toss aside the respect American courts have for the "right of nations to regulate conduct within their own borders [as] a

---

[11] ***Bell Atlantic Corp. v. Twombly***, *supra*, 550 U.S. at 554-55.

[12] *See Twombly*, *supra*, at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [liability] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] *that the pleader is entitled to relief*.'") (emphasis added); *see also id.*, at 558-559 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery a plaintiff armed with nothing more than conclusions. [O]nly a complaint that states a plausible claim *for relief* survives a motion to dismiss.") (internal citations omitted and emphasis added). Only law allows a Court to comment on the plausibility of the assertion that there is a right, under certain alleged facts, to relief.

fundamental concept of sovereignty . . ." ***Boureslan***, *supra*, 892 F.2d at 1272;[13] ***See also Klaxon***

***Co.***, *supra*, 313 U.S. at 496 ("We are of opinion that . . . ***Erie*** . . .  extends to the field of conflict

of laws."); ***Coca-Cola***, *supra*, 218 S.W.3d at 680 (it is especially sensitive for jurisdiction to

extend its laws governing economic concerns beyond its own borders).

It is indisputable that the Court applies the conflicts principles of the forum state to

pendent state law claims predicated on supplemental jurisdiction, as these pendent claims are.[14]

There therefore are several levels to the rule holding that Texas supplies the microscope for

studying the histology of plausibility. ***See Klaxon Co.***, *supra*.

Plaintiffs allege that they were "trafficked" into Texas and that they worked in Texas.[15]

The Texas Supreme Court would likely look at these characteristics of the SAC and conclude, on

the basis of the Restatement, that Texas has more contacts with the plaintiffs than Mississippi

and that Texas would therefore be the source, or not, of law validating, or not, the pendent state

law claims. ***See Klaxon Co.***, *supra*, at 496.

Ultimately, the Texas Supreme Court would conclude, more probably than not, that the

common law of Texas does not apply to claims for negligence, fraud and breach of contract

having so extraterritorial a basis. *Id*. ***See also Coca-Cola Co.***, 218 S.W.3d at 680 (sensitive for

jurisdiction to extend laws governing economic concerns beyond own borders); ***Volkswagen,***

---

[13] As this Court knows, ***Boureslan*** was affirmed by ***EEOC v. Arabian American Oil Co.***, an extraterritoriality opinion. ***See EEOC v. Arabian American Oil Co.***, 499 U.S. 244, 248, 111 S. Ct. 1227, 1230, 113 L. Ed. 2d 274 (1991) ("[The extraterritoriality presumption"] serves to protect against unintended clashes between our laws and those of other nations which could result in international discord. See McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 20-22 (1963).").

[14] ***See***, ***e.g.***, ***A.I Trade Finance Inc. v. Petra Int'l***, 62 F.3d 1454, 1463 (D.C.Cir. 1995) (when exercising supplemental jurisdiction, federal court applies forum state's choice-of-law rules when federal court must rule upon issue "regulated only by state law"); ***Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.***, 554 F.3d 595, 603 (5th Cir. 2009) (implying agreement with this principle).

[15] ***Cf***. Doc. #64, ¶¶ 1, 20 ("Plaintiff Biju Mukrukkattu Joseph ("B. Joseph") was recruited in 2004 from Dubai, United Arab Emirates by Defendants Dewan Consultants, Dewan, Rao, Burnett and Signal for work in the United States. After arriving in the United States in January 2007, B. Joseph worked at Signal's Orange, Texas facility.") – 66 (same).

*A.G v. Hon. Rogelio Valdez, Judge*, 909 S.W.2d 900, 903 (Tex. 1995) (granting writ of mandamus against Judge in products liability action who "failed to balance the interests of the foreign sovereign with those of the real parties in any respect. In fact, the trial court rejected any consideration of German law. This was an abuse of discretion.").

The Texas Supreme Court would likely be impressed by the fact, as alleged in the SAC, that the plaintiffs "are Indian nationals," *see* Doc. #64, ¶ 16. The corollary, as the SAC massively confirms, is that the plaintiffs are complaining about transactions affecting foreign nationals that occurred abroad. *See* SAC, Doc. #64, ¶ 15 ("Plaintiffs . . . were recruited from India and/or the United Arab Emirates . . ."). *See also Crawford*, *supra*, 2014 U.S. App. LEXIS 898, at *11 (Court may need to make *Erie* guess).

### a.   *Making The Right* Erie *Guess*

Section 6 of the Restatement (Second) of Conflicts of Law governs choice-of-law questions in Texas with other portions of the Restatement. *See National Union Fire Ins. Co. v. American Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). Commenting on subsection (2) of this section, the American Law Institute observed, as stated before, with regard to common law claims, that "courts *usually* adjudicate[] *only with the local situation* in mind." Restatement (Second) Conflict of Laws, supra, at § 6, Comment, Subsection (2) (emphasis added). This observation demonstrates that extraterritoriality is as powerful an issue with regard to common law claims as it is with regard to acts of Congress.

The SAC does not set forth a plausible basis for concluding that Texas law governed statements made to Indian nationals in India or the United Arab Emirates when they were made. Countless allegations in the SAC and its Exhibit, its RICO Chart, brim with representations allegedly made to plaintiffs abroad, Indian nationals, in India or the UAE. These allegations

13

prove persuasively, as the Fifth Circuit similarly observed in **Thule**, **infra**, at 746 n. 1, that with regard to the present action's pendent state law claims, "all of the activity forming the basis of this suit appears to have occurred in foreign settings."[16]

What the Court has before it is also a narrow question. The question, under **Twombly**, **Iqbal** and their progeny, concerns the plausibility of the assertion that when the representations this suit attacks were made abroad, the law of an American state rather than a foreign nation governed their making. **Cf**. **Volkswagen, A.G**, **supra**.

### b. **Coca-Cola**

Tending to establish that it would be right to guess that the Texas Supreme Court would reject the suggestion that the common law claims are based on Texas law is the Texas Supreme Court's opinion in **Coca-Cola**, which, roughly speaking, says what **Boureslan** does.

In this litigation, plaintiffs have tended to ridicule Signal's reliance on **Boureslan**, which refers to the "respect" of American courts "for the right of nations to regulate conduct within their own borders [as] a fundamental concept of sovereignty . . ." a "respect," the Court said, "not lightly [to be] tossed aside." **See Boureslan**, **supra**, 892 F.2d at 1272 ("The respect for the right of nations to regulate conduct within their own borders is a fundamental concept of sovereignty that is not lightly tossed aside.").

---

[16] For example, plaintiffs allege: "The false promises, collection of exorbitant recruiting fees, and strong-arm tactics of Defendant Signal and/or its agents were, upon information and belief, authorized by Defendant Signal, which, in any event, learned in detail of these facts at the latest from the very first Indian H-2B workers who arrived at Signal's facilities in the United States as early as October 2006. Far from taking any corrective measures, Defendant Signal ratified and perpetuated the scheme by continuing to facilitate the transportation of further waves of Indian H-2B workers, including Plaintiffs herein, from November 2006 through April 2007." **See** Doc. #64, ¶ 5 (emphasis added). Shortly, Signal will discuss the intersection, as a matter of law, of Rule 12(b)(6) and allegations made on information and belief. **Oasis Research, LLC v. ADRIVE, LLC**, 2011 U.S. Dist. LEXIS 80483, *8-*9 (E.D.Tex. May 23, 2011) (internal citations omitted). **See also Intravisual, Inc. v. Fujitsu Microelectronics America, Inc.**, 2011 U.S. Dist. LEXIS 28100, *18 (E.D.Tex. March 18, 2011).

The issue in **Coca-Cola** was "the Texas Free Enterprise and Antitrust Act of 1983 ('TFEAA') and the antitrust laws of the other three states," *see Coca-Cola*, *supra*, at 674. The Court was struggling with which law to apply. It wrote:

> It is **an especially sensitive matter** for a jurisdiction to extend its laws governing economic competition beyond its borders. Such laws necessarily reflect fundamental policy choices that the people of one jurisdiction should not impose on the people of another.

*See Coca-Cola*, *supra*, at 680.

In spite of such language, plaintiffs insist that the characteristics of the present matter enable the Court to lightly toss aside respect for India's right, for example, or that of the UAE, to regulate conduct occurring within their borders, as an attribute of sovereignty.

But again, as **Twombly** says, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" like that the common law claims in the suit are "based on state law," "will not do.'" *See Twombly*, *supra*, at 555.

Central to the position of the plaintiffs in this matter concerning the basis of their common law claims in state law is their allegation that Signal orchestrated the wrongdoing from which their injuries arose. On the question of how this kind of allegation impacts extraterritoriality analysis, the majority opinion in **Morrison**, *supra*, written by Justice Scalia, is instructive.

### c.  Morrison

**Morrison** was dismissed for lack of subject-matter jurisdiction based on extraterritoriality considerations. *See Morrison*, *supra*, at 2876.[17]

---

[17] **Morrison** states: "Respondents moved to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The District Court granted the motion on the former ground, finding no jurisdiction because the acts in this country were, 'at most, a link in the chain of an alleged overall securities fraud scheme that culminated abroad.' The Court of Appeals for the Second Circuit

The issue before the Court was the extraterritoriality of United States securities law. *See id.*, at 2877-78. Plaintiffs in *Morrison* were foreign shareholders who sued a foreign bank, a Florida mortgage servicing company, and certain executives, alleging violations of the Securities and Exchange Act of 1934. Paralleling the present case, in *Morrison*, plaintiffs argued that they advanced a territorial application of the Act because "Florida [was] where HomeSide and its senior executives engaged *in the deceptive conduct of manipulating* HomeSide's financial models; their complaint also alleged that Race and Hughes made misleading public statements there." *See id.*, at 2883-84 (emphasis added).

The majority rejected this argument. "*[I]t is a rare case of prohibited extraterritorial application*," the majority said, "*that lacks* all *contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever* some *domestic activity is involved in the case*. The concurrence seems to imagine just such a timid sentinel, but our cases are to the contrary. In *Aramco*, for example, the Title VII plaintiff had been hired in Houston, and was an American citizen. *The Court concluded, however, that neither that territorial event nor that relationship was the 'focus' of congressional concern*, *but rather domestic employment*." *See id.*, at 2884 (italics in original and emphasis added).

*Morrison* stressed that the key question is not whether an adverse effect would arise in the United States or whether conduct regulated by an American law occurred in the United States but rather the lawmaker's "focus." Said the Court, *see id*., 130 S. Ct at 2884:

---

affirmed on similar grounds. The acts performed in the United States did not 'compris[e] the heart of the alleged fraud.'" *Id*.

> Applying the same mode of analysis [as in *Aramco*] here, we think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. (Emphasis added).

In this case, where common law claims are the issue, the lawmaker is the state's highest court. And commenting on subsection (2) of § 6 in the Restatement on Conflicts, the American Law Institute stressed, with regard to common law claims and courts considering them, that "courts *usually* adjudicate[] *only with the local situation* in mind." Restatement (Second) Conflict of Laws, *supra*, at § 6, Comment, Subsection (2) (emphasis added).

This motion should therefore be granted. Given Texas' generally pro-business attitude, it is implausible to contend that Texas' public policy would embrace the idea that Texas law governed transactions in South Asia involving Indian nationals. *Cf. Coca-Cola*, *supra*, at 680-81.

### iv.    *Just Expectations*

One of § 6's variables is "the protection of justified expectations." *Id*. It is undisputed that the mechanism that authorized the plaintiffs to travel to the United States to work for Signal temporarily was the H-2B visa.[18] This is a non-immigrant visa covering temporary foreign labor. *See David v. Signal Int'l*, 2012 U.S. Dist. LEXIS 114247, *16 n. 10 (E.D.La. Jan. 12, 2012).[19]

---

[18] The underlying statute is 8 U.S.C. § 1184(a). The statute authorizes regulations concerning temporary foreign labor under specified conditions and provides that when the alien's status expires "or upon failure to maintain the status under which he was admitted . . . such alien *will* depart from the United States." 8 U.S.C. § 1184(a) (West Supp. 2009) (emphasis added). In addition, in 2007, subparagraph 17 of 8 C.F.R. 214.2 stressed that "any alien who violates his or her status or who remains in the United States after his or her authorized period of stay has expired *will be* subject to deportation." These effects were provided for *by law*.

[19] "At this point it bears noting that an H-2B guest-worker visa is fundamentally different than an employment-based green card. H-2B visas are *temporary, non-immigrant* visas. Under the H-2B program, a worker may come to the United States *temporarily* to work for an employer who has petitioned for the right to employ H-2B guest-workers and whose petition has been approved by the Department of Labor. Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393, 405 n.2 (5th Cir. 2010) (en banc) (Dennis, J., dissenting) (quoting 8 C.F.R. § 214.2(h)(1)(i)). Once admitted, the guest-worker's legal status is tied to performing labor for the specific employer who petitioned for the visa. Id. (citing § 214.2). If at any point the H-2B visa expires or the worker is dismissed from his job, then he is required to immediately leave the country. Id. (citing § 214.2(h)(6)(vi)(E), (h)(17)(iii)(C)). Under no circumstances can the worker remain in the country longer than three years. Id. (citing § 214.2(h)(15)(ii)(C)). An employment-based green card, on the other hand, is given to someone who has obtained an immigrant visa to enter the United

Under the settled principle that everyone is presumed to know the law, Plaintiffs are charged with understanding that their entry into the United States on the basis of H-2B visas was, by definition, a temporary one that would return the plaintiffs to their countries of origin in relatively short order. *Id*.

For the plaintiffs, the only "expectation" that was thus "justified" was to return to the home country. From the standpoint of assessing the law that the plaintiffs should have "expected" would apply to their disputes, plaintiffs had no cause to assume that American law would govern. Therefore, this motion is more trustworthy than the position of the plaintiffs.

Plainly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The assertion that the common law claims are "based on state law" is obviously a legal conclusion the Court is under no obligation to accept. *Id*. *Cf*. Doc. #64, ¶ 12 (common law claims are "based on state law").

It is the Court's responsibility, in response to Signal's motion, to assess the claim that the common law theories are "based on state law" to evaluate the plausibility of the claim.

### v.    *Dismissal Law after* **Twombly** *and* **Iqbal**

Concerning the Complaint's elemental allegation that the state law claims are viable as a matter of state law, which is, on its face, no more than a legal conclusion, *Ashcroft* observes:

> [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic

States on a permanent basis and to reside here indefinitely. Green card holders are permanent resident aliens and they have nearly all of the rights of a citizen. Generally speaking, a permanent resident alien can live and work in the United States without restriction. Thus, as a practical matter, H-2B employees cannot simultaneously be sponsored for an H-2B visa and a green card, given the fundamental difference in the temporal aspects of the two types of visas." (Italics in original).

> recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft*, *supra*, at 678-79, 129 S. Ct. at 1949-50.

Signal returns to the intersection, as a matter of law, between allegations made on information and belief and current Rule 12(b)(6) law. Concerning the allegation that the plaintiffs *believe* that Signal authorized abroad, wrongdoing relevant to their pendent claims, *see* Doc. #64, ¶ 5, as the Eleventh Circuit noted in *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013), all courts recognize that *Twombly* held that the Court is under no *obligation* to assume the truth of an allegation articulated on information and belief.[20]

Other divisions of this Court have dealt with this issue. "Allegations pleaded on 'information and belief' should be reviewed," the Sherman division wrote, "under *Twombly's* 12(b)(6) standard the same way as all factual allegations made in a complaint. The fact that the allegations are pleaded on 'information and belief' does not *automatically* render them insufficient." *Oasis Research, LLC v. ADRIVE, LLC*, 2011 U.S. Dist. LEXIS 80483, *8-*9 (E.D.Tex. May 23, 2011) (internal citations omitted and emphasis added). *See also Intravisual,*

---

[20] Paragraph 5 of the SAC reads, in full: "The false promises, collection of exorbitant recruiting fees, and strong-arm tactics of Defendant Signal and/or its agents were, *upon information and belief*, authorized by Defendant Signal, which, in any event, learned in detail of these facts at the latest from the very first Indian H-2B workers who arrived at Signal's facilities in the United States as early as October 2006. Far from taking any corrective measures, Defendant Signal ratified and perpetuated the scheme by continuing to facilitate the transportation of further waves of Indian H-2B workers, including Plaintiffs herein, from November 2006 through April 2007." (Emphasis added).

*Inc. v. Fujitsu Microelectronics America, Inc.*, 2011 U.S. Dist. LEXIS 28100, *18 (E.D.Tex. March 18, 2011).[21]

For the reasons stated in this Complaint, when the SAC is considered in its totality, the claims made on information and belief do not transform the SAC into one that is facially plausible with regard to pendent state law claims predicated on purely foreign transactions that concerned, at the transactional moment, foreign nationals. The SAC provides no basis for concluding that it is plausible to speculate, as a matter of public policy, that Texas would toss aside its interest in respecting the sovereignty of other jurisdictions with regard to economic transactions that occurred within their borders involving homegrown citizens. *Cf. Coca-Cola*, *supra*.  This motion should therefore be granted and the common law claims dismissed for failure to state a plausible, common law claim.

  *vi.*  <u>Sections 1981 and 1985 Not Extraterritorial</u>

In the present action, under the heading, Third Claim for Relief, which is the portion of the Complaint alleging, as it says, "VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1866 42 U.S.C. § 1981," Doc. #64 alleges, in relevant part: "As set forth in the preceding paragraphs, Defendant Signal also imposed discriminatory job-related requirements and adverse terms and conditions of employment to which its employees of non-Indian race, ethnicity, or alienage were not similarly subject." *See* Doc. #64, ¶ 351.

In *David*, the First Amended Complaint alleged, under the same banner: "As set forth in the preceding paragraphs, Defendant Signal also imposed discriminatory job-related

---

[21] "The [Marshall division] Court holds that allegations pled on 'information and belief' should be reviewed in the same way as all factual allegations in a Complaint. That is, the Court will review them under *Twombly's* 12(b)(6) formulation requiring sufficient fact pleading to make a claim plausible. The mere fact that allegations begin with the statement 'on information and belief' will not automatically render them insufficient."

requirements and adverse terms and conditions of employment to which non-Indian and/or U.S. citizen employees were not similarly subject."[22]

Crucially, in *David*, when the issue of certifying the § 1981 claim arose, various arguments were made to the Court by the class representatives, on behalf of themselves and the plaintiffs in the present action, who were absent class members, concerning what the claims were about. ***See David***, *supra*, at *114-*124.

In analyzing the claims relative to § 1981, ***David*** observed, after commenting on "the significant recruitment fees that the[] [class] are trying to recoup as compensatory damages – ***fees that were paid to third parties before the plaintiffs ever arrived at Signal***," "[such damages] are not an element of damages attributable to discrimination ***at Signal's facilities***." ***David v. Signal Int'l, LLC***, *supra*, at *120 (emphasis added).

Continued ***David***: "Plaintiffs cannot change the nature of § 1981 recovery by defining their own damages scheme based on what they believe would be a just result under the bigger picture of the facts." ***Id***.

This aspect of ***David*** indicates that Doc. #64 should be construed as a document likewise designed to put Signal on notice of the allegation that the plaintiffs were recruited, abroad, in ways that violated § 1981, and that the plaintiffs should be compensated accordingly relative to fees that were paid to third parties before the plaintiffs ever arrived at Signal.[23]

---

[22] At the time of the class certification decision, while there was a Second Amended Complaint, it in no material respect differed from the First Amended Complaint. After the opinion denying certification, the plaintiffs in *David* filed a Third Amended Complaint, partly to delete class allegations. The Complaint is Doc. #1224 in *David*. Under the banner, again, of § 1981 violations, Doc. #1224 alleges: "As set forth in the preceding paragraphs, Defendant Signal also imposed discriminatory job-related requirements and adverse terms and conditions of employment to which non-Indian and/or U.S. citizen employees were not similarly subject." ***See David***, No. 08-1220, E.D.La., Doc. #1224, ¶ 338.

[23] If the Court will compare the allegations of ¶¶ 346-358 of Doc. #64 herein to the First Amended Complaint in *David*, i.e., Doc. #47, ¶¶ 319-331, and the Third Amended Complaint therein, i.e., Doc. #1224, ¶¶ 333-345, it will find, with regard to § 1981, that the allegations are virtually identical.

The prayer of the SAC seeks "Compensatory damages; . . ." *See* Doc. #64, p. 68. In addition, after setting forth their cause of action relative to § 1981, Plaintiffs allege, "Plaintiffs seek all appropriate relief, including declaratory relief, attorneys' fees, costs of this action, and damages, including compensatory and punitive damages, in an amount to be determined at trial." *See* Doc. #64, ¶ 358.

As indicated earlier, the history of the litigation to date is that the H-2B workers insist that the recruitment process abroad violated § 1981 abroad and that this gives rise to a corresponding liability on Signal's part with regard to "recruitment fees." ***See David v. Signal Int'l, LLC***, *supra*, 2012 U.S. Dist. LEXIS 114247 at *120.

      a.     <u>No Extraterritorial Intent</u>

Asserting that § 1981 governs events occurring abroad is contrary to law, however, in light of the fact that § 1981 refers explicitly to "'[a]ll persons within the jurisdiction of the United States;'" § 1981 is not extraterritorial.[24] In general terms, the allegations of Doc. #64 certainly make it clear that the "recruitment" of the plaintiffs occurred abroad.

In summary, the Complaint should be dismissed, *pro tanto*, with regard to § 1981, for failure to state a claim, insofar as concerns the recovery, on the basis of the civil rights statutes, of fees paid abroad. *Cf*. ***David v. Signal Int'l, LLC***, *supra*.

      b.     <u>Section 1985</u>

The SAC also sets forth a Fourth Claim for Relief on the basis of 42 U.S.C. § 1985(3), a statute that refers to things done by "two or more persons ***in any State or Territory*** . . ." 42

---

[24] ***See Ofori-Tenkorang v. American Int'l Group, Inc.***, 460 F.3d 296, 307 (2nd Cir. 2006) ("Congress has not extended Section 1981 to apply to claims arising from discrimination that occurred while a plaintiff was not 'within the jurisdiction of the United States,' . . ."); ***See also Collins v. CSA, Ltd.***, 2012 U.S. Dist. LEXIS 50822, *5-*6 (N.D.Tex. March 27, 2012) (citing omitted cases, including ***American Int'l***).

U.S.C. § 1985 (Lexis 2012) (emphasis added). *See* Doc. #64, ¶¶ 359-365 (§ 1985(3) claim). It is therefore equally apparent that the § 1985 claim is not extraterritorial.

To the extent § 1985 is being used to complain about Signal's direct and indirect conduct abroad for the purpose of collecting damages from Signal in an amount equivalent to recruitment fees or related expenses paid abroad, any such claim should be dismissed *pro tanto* based on the premise that § 1985 does not apply extraterritorially.

## III.   CONCLUSION

For the reasons above stated, to the extent the SAC asserts that Signal violated §§ 1981 and 1985 abroad and that the plaintiffs are therefore entitled, pursuant to these statutes, to recover the fees they paid abroad, the SAC should be dismissed *pro tanto*.

With regard to pendent state law claims for fraud, negligent misrepresentation and breach of contract, the SAC is implausible. The SAC's pendent state law claims should therefore be dismissed.

Respectfully submitted this 30th day of January, 2014.

Respectfully submitted,

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner*(Pro Hac Vice)*, La. Bar No. 24768
HANGARTNER, RYDBERG, TERRELL & HART, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, LA   70139
Telephone (504) 522-5690
Fax:        (504) 522-5689
ehangartner@hanrylaw.com

Attorneys for Signal International
LLC, Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2014, I electronically filed the foregoing Motion of Signal Defendants to Dismiss Pursuant to Fed. R.Civ. P. 12(b)(6) on behalf of Signal International, LLC, Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P., with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*

24