IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

---

BIJU MUKRUKKATTU JOSEPH, *et al.*,  )
  )
　　　　　　　　　　Plaintiffs,  )
　　　v.  )　　Civ. No.  1:13-cv-00324-RC-ZJH
  )
SIGNAL INTERNATIONAL LLC, *et al.*,  )
  )
　　　　　　　　　　Defendants.  )

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF SIGNAL
DEFENDANTS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Daniella D. Landers (Texas Bar No. 24026260)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas  77002-6760
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
John H. Fleming
Keith J. Barnett
Gabriel A. Mendel
Kurt Lentz
Kara D. Duffle
Sheena Paul
Teresa L. Sulmers
(admitted by *pro hac vice*)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia  30309-3996
Telephone:  (404) 853-8000
Facsimile:  (404) 853-8806
***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL BACKGROUND .....................................................................................3

     A.    Signal Breached its Obligations and Defrauded Plaintiffs in Texas........................3

     B.    Plaintiffs' Civil Rights were Violated in Texas. ......................................................4

III.    STANDARD OF REVIEW ........................................................................................5

IV.    LEGAL ARGUMENT ...............................................................................................6

     A.    Choice of Law is a Conclusion of Law and Therefore Inappropriate on a
          Motion to Dismiss...................................................................................................6

     B.    Plaintiffs' Common Law Claims Occurred in Texas, and Texas Law
          Applies to their Common Law Claims. ...................................................................9

          1.    The Complaint Clearly Alleges Signal Breached its Obligations
                and Defrauded Plaintiffs in Texas.................................................................9

          2.    Texas' Choice of Law Analysis Requires that Texas Law Apply to
                Plaintiffs' Common Law Claims. .................................................................11

          3.    Even if Indian Law Were to Apply, Which It Does Not, That
                Conclusion of Law Would not Provide Grounds for Dismissal. ...............13

     C.    Plaintiffs' Complaint States Sufficient Facts that Plaintiffs' Civil Rights
          were Violated in Texas. .........................................................................................16

V.    CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ...............................6, 7

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ...............6, 7

*Boureslan v. Aramco,* 857 F.2d 1014 (1988), *on reh'g*, 892 F.2d 1271 (5th Cir. 1990) ...............14

*Brink's Ltd. v. S. African Airways*, 93 F.3d 1022 (2nd Cir. 1996)..................................................14

*Brown v. Tethys Bioscience, Inc.*, No. 1:10-1245, 2011 WL 1627353 (S.D. W.Va., April 28, 2011) ............................................................................................................................7

*Cantonis v. Stryker Corp.*, Civ. No. 09-3509, 2010 WL 6239354 (D. Minn., Nov. 23, 2010) ...........................................................................................................................7

*Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) .................................. 14-15

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001) ...............................................12

*Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248 (5th Cir. 2011) ......................................6

*David v. Signal Int'l, LLC*, Case No. 08-cv-1220, 2012 U.S. Dist. Lexis 114247 (Jan. 3, 2012) ............................................................................................................................18

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex. 1984) ......................................................12

*Faggionato v. Lerner*, 500 F. Supp. 2d 237 (S.D.N.Y. 2007) .......................................................14

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) ..............................................................................6

*Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. App'x 361, 2013 WL 49587 (5th Cir. 2013) ............................................................................................................................6

*Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141 (5th Cir. 2009)..................................5, 6

*Indest v. Freeman Decorating, Inc.,* 164 F.3d 258 (5th Cir. 1999) ...............................................16

*IntelliGender, LLC v. Soriano*, 2011 WL 903342 (E.D. Tex. Mar. 15, 2011) ...........................8, 9

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941) .....................................................11

*Meats by Linz, Inc. v. Dear*, 2011 WL 1515028 (N.D. Tex. Apr. 20, 2011).........................7, 8, 9

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010) ............................15

*Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F. Supp. 829 (S.D. Tex. 1993) ...................................14

*Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999).......................................................14

*Thule Drilling ASA v. Schimberg*, 290 Fed. App'x 745 (5th Cir. 2008)................................7, 8, 9

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011)............................................................................6

*Whiddon v. Chase Home Fin., LLC,* 666 F. Supp. 2d 681 (E.D. Tex. 2009) ...............................16

**Statutes**

42 U.S.C. § 1981...............................................................................................................2, 18

42 U.S.C. § 1985...............................................................................................................2, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................2, 5, 6, 7, 9

**Treatises**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971) ......................................................12

Defendants Signal International, LLC, Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P. (collectively referred to herein as "Signal"), have moved for the dismissal of Plaintiffs' state law claims for fraud, breach of contract, and negligent misrepresentation, and of Plaintiffs' federal civil rights claims on the asserted ground that the wrongs of which Plaintiffs complain occurred abroad.  (ECF No. 70.)  But, Signal's motion ignores that the wrongs perpetrated by these United States Defendants, acting in concert with United States and foreign agents, were all designed to (and did) traffic Plaintiffs into this District and subject Plaintiffs to months of discrimination and abuse in this District.  This is alleged in great detail in Plaintiffs' Second Amended Complaint and its attached (and incorporated) Exhibit 1.  (ECF No. 64 and 64-1.)  It is simply inaccurate to portray Plaintiffs' claims as emanating solely from a foreign jurisdiction or as having no relation to the law of Texas.  Plaintiffs have adequately alleged that the acts giving rise to Signal's liability under Texas law and under federal civil rights law occurred within the United States.  For these reasons, Signal's motion should be summarily denied.

## I.        INTRODUCTION

Plaintiffs bring this action (the "Complaint") against their former employers, Signal, along with various agents of Signal.  This case involves Signal's exploitation, in Texas, of skilled construction workers from India.  Plaintiffs were among over 500 Indian workers lured to the United States by Signal and Signal's network of recruiters working on its behalf (the "Signal Recruiters"), with false promises of permanent residency in the United States for the Plaintiffs and their families.  Based on these false promises, Plaintiffs each sold significant personal assets, and borrowed the rest, to pay exorbitant fees to come to Texas to work for Signal.  Upon arrival in Texas, Plaintiffs were subjected to appalling conditions in Signal's so-called "man camp" in

Orange, Texas (the "Texas Labor Camp").  Signal directed this scheme from the United States and lured the Plaintiffs to the Texas Labor Camp.  Signal defrauded the Plaintiffs in Texas, and breached its obligations to the Plaintiffs in Texas.  While in Texas and employed by Signal, Plaintiffs were abused, discriminated against, mistreated, and subjected to numerous misrepresentations.

Signal has filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' common law claims for breach of contract, fraud, and negligent misrepresentation ("Common Law Claims"), alleging that Plaintiffs have failed to state a plausible claim under Texas law.  Signal's motion, however, does not contend, much less demonstrate, that Plaintiffs have failed to sufficiently plead the elements of their common law claims.  Rather, Signal speculates that choice-of-law principles may keep Plaintiffs' state law claims from going forward because some of the initial recruiting activities occurred overseas.  Although Signal mischaracterizes the Complaint as alleging only harms committed in India, Plaintiffs' 384-paragraph Second Amended Complaint and 68-page Exhibit 1 (RICO Fraud Chart) with detailed factual allegations incorporated into the Complaint are replete with facts specifying Signal's unlawful and actionable conduct in Texas and the harm that Signal caused Plaintiffs in Texas.

Signal also moves to dismiss Plaintiffs' claims under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1985 ("Civil Rights Claims") because those sections do not apply to extraterritorial actions.  On the contrary, Plaintiffs have adequately alleged that the acts giving rise to Signal's liability under 42 U.S.C. §§ 1981 and 1985 occurred within the United States. Furthermore, any question as to the extent to which those sections apply will require the Court to evaluate facts, rendering Signal's argument inappropriate on a motion to dismiss.

At this stage in the litigation—in which Plaintiffs' factual allegations are presumed true—the Complaint states not just plausible, but also compelling Common Law Claims and Civil Rights Claims.  Accordingly, Signal's motion to dismiss should be denied in its entirety.

## II.      FACTUAL BACKGROUND

### A.      SIGNAL BREACHED ITS OBLIGATIONS AND DEFRAUDED PLAINTIFFS IN TEXAS.

Signal is a large marine and fabrication company with extensive operations in Orange, Texas; Pascagoula, Mississippi; and Mobile, Alabama.  Second Am. Compl. ("Compl.") ¶ 67, ECF No. 64.  Beginning in 2003, Signal, by and through the Signal Recruiters, conducted a global recruitment effort to lure Plaintiffs from India and the United Arab Emirates to perform welding and pipefitting work at Signal's marine fabrication facility in Orange, Texas.  *Id*. ¶¶ 112-142.  The Signal Recruiters were all agents of Signal.  *Id.* ¶ 105.  Signal, operating from the United States, authorized and utilized the Signal Recruiters to act as their India and United Arab Emirates agents to obtain cheap labor for Signal's Texas Labor Camp.  *Id.* ¶ 149.

Signal and the Signal Recruiters promised Plaintiffs employment with Signal, as well as future permanent work-based immigration in the United States.  *Id.* ¶ 3.  Signal, operating from the Texas Labor Camp and its other Gulf Coast operations, maintained continuous communications and control over its recruiters regarding the recruitment of, and promises to be made to, Plaintiffs.  *Id.* ¶¶ 1-2, 148-152, 158; Compl. Ex. 1 ¶¶ F207, F244, F253, F277, F288, F317, F327.[1]  In reliance on the promises of Signal and its agents, Plaintiffs incurred large debts to pay the "recruitment" fees required by Signal and its agents, in violation of United States law.  Plaintiffs' relinquished stable employment opportunities in India and as guest workers in the Persian Gulf to come to the Texas Labor Camp.  Compl. ¶¶ 3, 273, 382, ECF No. 64.

_____

[1] All citations to Complaint Exhibit 1 refer to the "RICO Fraud Chart" (ECF No. 64-1).

Signal authorized the Signal Recruiters to make these representations even though Signal knew or had reason to know that such visa extensions and green card applications would not be *bona fide*, valid, or lawful under United States immigration law, and even though Signal did not have the intention at that time to apply for visa extensions or green cards on behalf of the Plaintiffs. *Id.* ¶ 152.  Assuming arguendo that even if Signal were somehow unaware of these representations before Plaintiffs arrived at the Texas Labor Camp, Signal ratified its agents' conduct by continuing to hire workers recruited by its agents once it learned about the promises and representations.  Signal continued to facilitate the transportation of hundreds of Indian H-2B Workers, including Plaintiffs, to Signal worksites in Texas and Mississippi because it was in Signal's financial interest to do so. *Id.* ¶¶ 160-161, 201-202.

After paying Signal's excessive recruitment fees, Plaintiffs were provided with one-way tickets to the United States. *Id.* ¶¶ 200-201.   Immediately upon arrival, Plaintiffs were sent by Signal to the Texas Labor Camp. *Id.* ¶ 202.  While Plaintiffs were working at the Texas Labor Camp, Signal repeatedly promised visa extensions and green cards as originally contracted for when Plaintiffs were recruited by Signal and the Signal Recruiters. *Id.* ¶¶ 279-280.  Through these promises and misrepresentations at the Texas Labor Camp, Signal continued to defraud Plaintiffs regarding their visa status, even while threatening them with arrest, loss of immigration status, and deportation.  Compl. ¶¶ 2, 3, 6, 229, 245, 281, 284, ECF No. 64; Compl. Ex. 1 ¶¶ F364, F383, F411, F438, F465, F484, F488, F499.  These breaches of Signal's contractual obligations and tortious actions committed against Plaintiffs occurred in Texas, at the Texas Labor Camp.

## B.      PLAINTIFFS' CIVIL RIGHTS WERE VIOLATED IN TEXAS.

Signal subjected Plaintiffs to appalling living conditions in the Texas Labor Camp. *Id.* Compl. ¶¶ 206-218, ECF No. 64.  Plaintiffs were forced to live in a guarded, overcrowded,

isolated labor camp surrounded by a fence.  *Id.* ¶¶ 6, 206-208.  Up to twenty-four men were housed in each bunkhouse and made to sleep in two-tiered bunk beds.  *Id.* ¶ 211.  The Texas Labor Camp bunkhouses had insufficient toilet and bathing facilities for twenty-four men, one or two toilets per bunkhouse, resulting in long lines for the bathrooms before and after work shifts. *Id.* ¶ 212.  These housing conditions violated the Occupational Safety and Health Act regulations.  *Id.* ¶ 211.  Non-Indian worker were not subjected to these conditions.  *Id.* ¶¶ 219, 350.

In addition to the unsanitary, inhumane living conditions, Signal subjected Plaintiffs to abusive and discriminatory work conditions at the Texas Labor Camp.  *Id.* ¶¶ 221, 352, 354, 355. Signal subjected Plaintiffs to skills testing and re-testing, on-the-job discipline, layoffs, periods without work, inadequate safety precautions, unfavorable job assignments, unfair evaluation processes, and other adverse employment actions to which non-Indian and United States citizen workers were not similarly exposed.  *Id.* ¶ 220.  Signal's Texas Labor Camp personnel and supervisors frequently used offensive language while speaking with or referring to Plaintiffs and regularly insulted Plaintiffs because of their race and/or alienage.  *Id.* ¶ 221.  Signal's action created a discriminatory and hostile work environment and was perceived as such by Plaintiffs. *Id.* ¶¶ 221, 352-355.  Signal's statements were threatening, and Plaintiffs reasonably believed that they had no choice but to continue working for Signal despite these deplorable working and living conditions.  *Id.* ¶ 230.  All of the foregoing inhumane living conditions and forced labor activities occurred in Texas at Signal's Texas Labor Camp.

## III.   STANDARD OF REVIEW

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are generally viewed with disfavor in the Fifth Circuit and rarely granted.  *Harrington v. State Farm Fire & Cas. Co.,*

563 F.3d 141, 147 (5th Cir. 2009) (quotation marks and citation omitted).  Facts are construed liberally in favor of the plaintiffs and the Court accepts well-pleaded facts in the complaint as true.  *Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. App'x 361, 362, 2013 WL 49587 (5th Cir. 2013) (citing *Harrington*).

Dismissal is inappropriate unless the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007).  To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248, 252 (5th Cir. 2011)).  The touchstone of the analysis of a motion to dismiss under Rule 12(b)(6) is "plausibility."  The complaint must allege enough facts to move the claim "across the line from conceivable to plausible." *Turner*, 663 F.3d at 775 (citing *Twombly,* 550 U.S. at 570, 127 S. Ct. 1955).  Essentially, those factual allegations "must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). Here, Plaintiffs' Complaint and Exhibit 1 as amended have alleged specific facts to state to claim of relief that is more than plausible on its face.

## IV.   LEGAL ARGUMENT

### A.   CHOICE OF LAW IS A CONCLUSION OF LAW AND THEREFORE INAPPROPRIATE ON A MOTION TO DISMISS.

Signal's motion to dismiss Plaintiffs' Common Law Claims is predicated upon an argument that Plaintiffs' pendent claims are not plausible because some of the underlying actions

took place abroad, arguing either (a) the Complaint makes no conclusions regarding the outcome of a choice of law analysis, or (b) that Indian law *may* apply to the claims.  Neither argument provides a basis for granting Signal's motion to dismiss these claims, and Signal's motion to dismiss Plaintiffs' Common Law Claims should be denied.

As a preliminary matter, there is no basis for moving to dismiss a complaint on "choice of law" grounds.   Courts have held a choice of law analysis is premature at the threshold stage of a Rule 12(b)(6) motion to dismiss.  *See Cantonis v. Stryker Corp.*, Civ. No. 09-3509, 2010 WL 6239354, at *3 (D. Minn., Nov. 23, 2010) ("Defendants also assert, with minimal explanation, that Texas state law applies to all of Plaintiff's claims. ***It is premature, however, to perform a choice-of-law analysis on the motion-to-dismiss-record now before the Court***. Without further discovery, it is difficult to determine which state law should be applied to Plaintiff's claims." (emphasis added)).[2]

Signal relies primarily on three cases for its contention that courts in this Circuit must examine the source of applicable law to answer the question of plausibility: *Meats by Linz, Inc. v. Dear*, 2011 WL 1515028 (N.D. Tex. Apr. 20, 2011), *Thule Drilling ASA v. Schimberg*, 290

---

[2] The Complaint asserts no conclusions regarding the relevant choice of law.  This is irrelevant to an analysis of the factual sufficiency of a complaint under the precedent of *Iqbal* and *Twombly*. "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *See Iqbal*, 129 S. Ct. at 1949 (emphasis added).  Plaintiffs were under no requirement to make a conclusion regarding the relevant choice of law in the Complaint.  *See, e.g.*, *Brown v. Tethys Bioscience, Inc.*, No. 1:10-1245, 2011 WL 1627353, at *3-4 (S.D. W.Va., April 28, 2011) ("While [Plaintiffs] may not be entitled to pursue a fraud claim under West Virginia law, they have stated a *prima facie* case for fraud in any number of jurisdictions.  Although [Defendant] argues it should not have to guess about which State's law applies and that plaintiffs should be required to specifically assert the law of the State that governs their fraud claim, *they fail to assert any authority for that proposition*. In any event, the choice of law issue will be resolved based on the facts of the case and not the assertions made by the parties." (emphasis added)).

Fed. App'x 745, 746 (5th Cir. 2008), and *IntelliGender, LLC v. Soriano*, 2011 WL 903342 (E.D.

Tex. Mar. 15, 2011).  None of these cases suggest that dismissal is appropriate here.

First, Signal cites *Meats*, a case in which choice of law was not at issue.  The contract

involved contained a choice of law provision stating that any claims were to be assessed under

Illinois law.  2011 WL 1515028, at *4.  Accordingly, in assessing whether the plaintiff had stated

a claim, the court looked to Illinois law.  *Id.*

Second, *Thule* is a two-page remand opinion in which the Fifth Circuit concluded: "The

record before us does not permit meaningful appellate review; it leaves us unable to determine

on what basis the district court found that the Texas laws related to corporate officer tort liability

were not sufficient to make [defendant] liable for his conduct or for the corporate conduct in

which he is alleged to have participated."  290 Fed. App'x at 746.

Finally, the motion at issue in *IntelliGender* was to dismiss a third-party counterclaim for

defamation in a federal court in Texas based on the existence of an allegedly defamatory letter

published to the Chilean Department of Labor by a Chilean company with respect to one of its

employees in Chile.  The court agreed that "the defamation claim may likely be decided under

Chilean law."  *IntelliGender*, 2011 WL 903342 at *16.  The court did not dismiss the claim,

however, and even denied a motion for dismissal based on *forum non conveniens*; it noted that

the question of which law applied could be decided later.  *Id.*[3]

---

[3] Signal acknowledges that the *IntelliGender* court stated that the moving party had failed to brief the choice-of-law issue or the Chilean law defense under which it sought dismissal, but erroneously claims that because Plaintiffs will eventually need to prove their claims at trial, they are required to prove at this stage of the litigation that Texas law applies or risk dismissal. Rather, because Signal claims that Indian law applies and that the claims are invalid under Indian law, it is Signal that stands in the posture of the *IntelliGender* movant and therefore bears the burden of briefing Indian law.

Here, the relevant threshold matter in response to Signal's motion to Dismiss is whether the Complaint alleges facts which, assuming them to be true in a light most favorable to Plaintiffs, would support the Common Law Claims, regardless of the relevant state (or country) that provides the relevant substantive law.  Neither *Meats* nor *Thule* nor *IntelliGender*—nor any other case cited by Signal—holds that a court may dismiss a pendent common law claim under Rule 12(b)(6) because the law of another jurisdiction may apply to that claim.  Signal does not argue that Plaintiffs' claims are implausible under Indian law, and cites no Indian law in its motion papers.  Therefore, this Court should deny Signal's motion.

**B.     PLAINTIFFS' COMMON LAW CLAIMS OCCURRED IN TEXAS AND TEXAS LAW APPLIES TO THEIR COMMON LAW CLAIMS.**

A detailed, fact intensive choice of law analysis is premature at this stage.  At most, the Court should determine whether Plaintiffs allege sufficient facts to allow the Court to make a preliminary determination regarding the relevant state law for Plaintiffs' Common Law Claims. The Complaint satisfies this inquiry as it alleges sufficient facts that Plaintiffs' Common Law Claims occurred in Texas and that Texas law applies to the claims.  Signal's fixation on the supposed "foreign character" of Plaintiffs' allegations misstates the Complaint and offers no plausible grounds for dismissing Plaintiffs' Common Law Claims.

Even if the Court determines that a choice-of-law analysis is required at this stage, however, it is Texas law—and not Indian law—that applies to Plaintiffs' claims under the facts currently alleged.

**1.     The Complaint Clearly Alleges That Signal Breached its Obligations and Defrauded Plaintiffs in Texas.**

Plaintiffs' Common Law Claims are grounded in Signal's actions in the United States, specifically Texas, and unequivocally support the conclusion that Texas provides the relevant state law for this Court to determine Plaintiffs' pendent state law claims.

9

The Complaint alleges that Plaintiffs were recruited by Signal and the Signal Recruiters, both in the United States and abroad, to work at Signal's Texas Labor Camp.  Compl. ¶ 1, ECF No. 64.  Signal and the Signal Recruiters contracted to obtain permanent residence and immigration status for Plaintiffs in the United States within 18 to 24 months, as well as steady work opportunities in the United States.  *Id.* ¶¶ 125-127.  Plaintiffs accepted Signal's offer, paid their fees, and were transported to the Texas Labor Camp in the United States to perform work for Signal.  *Id.* ¶¶ 127, 132, 137, 201, 202.  While Plaintiffs were initially lured and defrauded abroad by the Signal Recruiters, the Signal Recruiters were at all times operating pursuant to Signal's direction to traffic Plaintiffs to work in Orange, Texas.  *Id.*

Signal then ratified the actions of the Signal Recruiters, continuing to defraud and breach its allegations to Plaintiffs regarding their immigration status upon their arrival at the Texas Labor Camp.  *Id.* ¶¶ 2, 3, 6, 229, 245, 281, 284; Compl. Ex. 1 ¶¶ F364, F383, F411, F438, F465, F484, F488, F499.  Throughout the spring and summer of 2007, Signal personnel in the Labor Camp held various meetings with Plaintiffs and other Indian H-2B Workers to discuss the status of Plaintiffs' and other Indian H-2B Workers' visas and green card applications.  Compl. ¶ 276, ECF No. 64.  While Plaintiffs were at the Texas Labor Camp, Signal continued to promise that it would arrange for the H-2B visa extensions and green cards originally promised and contracted for with Plaintiffs when they were recruited in India and the United Arab Emirates.  *Id.* ¶ 280.  Signal breached these contracts with Plaintiffs by failing to comply with their binding promises regarding permanent residence and immigration status.  *Id.* ¶ 285.

Signal and the Signal Recruiters knowingly or, at the very least, negligently made materially false and untrue statements and representations to Plaintiffs regarding the nature and terms and conditions of applications and opportunities for immigration status and employment in

the United States.  *Id.* at ¶ 152, 332.  Signal intended that the false statements made by Signal and the Signal Recruiters would induce Plaintiffs to pay exorbitant fees to the Signal Recruiters and would induce Plaintiffs to remain as Texas Labor Camp workers, despite deplorable conditions.  *Id.* ¶¶ 291, 369, 370.  In reliance on Signal's representations, Plaintiffs paid large sums of money, incurred debts, sold property, and surrendered employment opportunities.  *Id.* ¶¶ 372-375.  After the initial recruitment and while Plaintiffs were working at the Texas Labor Camp, Signal repeatedly misrepresented the status of Plaintiffs' promised visa extensions and green cards.  *Id.* ¶¶ 2, 3, 6, 229, 245, 281, 284; Compl. Ex. 1 ¶¶ F364, F383, F411, F438, F465, F484, F488, F499.  Signal also continually threatened Plaintiffs with arrest, loss of immigration status, and deportation.  *Id.*

The Signal Recruiters were Signal's agents, who contracted with Signal to bring Plaintiffs to work for Signal in the United States, including the Texas Labor Camp.  Signal operated its entire enterprise out of the United States to traffic Plaintiffs to work at the Texas Labor Camp.  The Complaint makes clear that these breaches of Signal's contractual obligations and tortious actions committed against Plaintiffs originated in Texas, were to be performed in Texas, and continued to occur in Texas, specifically at the Texas Labor Camp.

**2.    Texas' Choice of Law Analysis Requires that Texas Law Apply to Plaintiffs' Common Law Claims.**

While a fact intensive choice of law analysis is premature at this threshold stage, even a preliminary inquiry into the Complaint's allegations confirms the Complaint alleges sufficient facts to plausibly support such an analysis.

In a federal question action in which the federal court is exercising supplemental jurisdiction over state law claims, a federal court applies the choice-of-law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *see also*

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001).  Texas state courts use a choice-of-law formula borrowed from Sections 6 and 145 of the Restatement (Second) of Conflict of Laws, and will apply the law of the state with the most significant relationship to a particular substantive issue.  *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)).[4]

Signal fixates on its recruitment abroad and argues this is where the "injury occurred." Signal is incorrect and ignores the allegations, recounted above, that Signal's actions and Plaintiffs' injuries occurred in *both* India (as well as Saudi Arabia and the United Arab Emirates) and Texas.  Regardless, location of injury is only one of several factors to be considered by this Court in applying Texas' choice of law analysis.[5]

---

[4] Section 145(1) provides that the rights and liabilities of the parties with respect to an issue sounded in tort are determined "*by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.*"  Restatement (Second) of Conflict of Laws § 145 (1971).  Section 6 provides various factors to be considered by the court, including (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.  *Id.* at § 6.  Section 145(2) further provides that certain "contacts" are to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue, including (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  Section 145(2) further provides that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Id.* at § 145.

[5] Indeed, the Texas Supreme Court has expressly rejected "place of injury" as the determinative factor in a choice of law analysis.  In adopting the Restatement, the Texas Supreme Court rejected the doctrine of *lex loci delicti*, or the law of the place where the wrong occurred, as the determinative factor in a choice of law analysis.  *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-421 (Tex. 1984).  Even if Signal is correct that the Complaint alleges only injuries in India (which it plainly does not), such an analysis would revert back to an inflexible *lex loci delicti* choice of law framework that the Texas Supreme Court expressly rejects.

The Complaint clearly alleges that Signal operated from the United States in recruiting Plaintiffs and continued to breach its contractual obligations and defraud Plaintiffs at the Texas Labor Camp.   The relationship between Signal and the Plaintiffs centered around the Texas Labor Camp.   At all relevant times, Signal operated from the United States.   The Plaintiffs were recruited specifically to work at the Texas Labor Camp, the Plaintiffs performed substantial work at the Texas Labor Camp, and the Plaintiffs were injured at the Texas Labor Camp. Furthermore, almost all of the Plaintiffs currently reside in the United States, with many residing in Texas.   All relevant factors support this Court applying Texas law to Plaintiffs' Common Law Claims.[6]

### 3. Even if Indian Law Were to Apply, Which It Does Not, That Conclusion of Law Does not Provide Grounds for Dismissal.

Signal vaguely insinuates that the supplemental claims must be brought under Indian law, but provides no evidence in support of such a conclusion aside from suggestive references to the "extraterritorial" nature of the Common Law Claims.   Mot. to Dismiss, ECF No. 70.   Moreover, Signal fails to explain why Plaintiffs' claims are implausible or deficient as a matter of Indian law, which it asserts is the standard for deciding its motion to dismiss.

Regardless of Signal's inaccurate characterization of the "extraterritorial" nature of Plaintiffs' claims, whether Plaintiffs' Common Law Claims are subject to Indian law provides no basis for dismissal.   Even if Indian law were to apply—and it does not—federal courts are

---

[6] Although Signal argues that for the Plaintiffs, "the only 'expectation' that was [] 'justified' was to return to the home country" and that United States law therefore should not apply, this assertion clearly ignores that the Plaintiffs came to the United States with the full expectation of permanent work-based residency and that such an expectation was based entirely on the representations of Signal and its agents, the Signal Recruiters.   Having lied to and defrauded the Plaintiffs by promising them permanent residency and failing to take any steps to help Plaintiffs acquire that residency, Signal cannot now simply avoid the claims against them by arguing that "everyone is presumed to know the law."

empowered to hear and decide disputes under foreign law, including Indian law.  *Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F. Supp. 829, 834 (S.D. Tex. 1993) ("Indian law applies to this case whether tried in this forum or abroad . . . ."); *see also Brink's Ltd. v. S. African Airways*, 93 F.3d 1022 (2nd Cir. 1996) (applying South African law); *Spinozzi v. ITT Sheraton Corp*., 174 F.3d 842 (7th Cir. 1999) (applying Mexican law); *Faggionato v. Lerner*, 500 F. Supp. 2d 237 (S.D.N.Y. 2007) (applying French law).  Even if this Court were to decide that Indian law applies, this Court would remain the proper forum for resolving Plaintiffs' Common Law Claims.

In support of its argument that Texas law does not apply, Signal cites multiple cases concerning extraterritoriality.  None of these cases support the assertion that dismissal is appropriate here.

Signal cites to *Boureslan v. Aramco,* 857 F.2d 1014, 1015 (5th Cir. 1988), *on reh'g Boureslan v. Aramco,* 892 F.2d 1271 (5th Cir. 1990), to bring to this Court's attention the "respect" of American courts for "the right of nations to regulate conduct within their own borders [as] a fundamental concept of sovereignty . . . not lightly to be tossed aside."  Mot. to Dismiss at 7, ECF No. 70.  But *Boureslan* involved a plaintiff who was working in Saudi Arabia, for a corporation whose principal place of business was in Saudi Arabia, and who alleged that he was discriminated against while working in Saudi Arabia.  *Id*.  Plaintiffs allege wrongs *in Texas*. Signal's citation to *Boureslan* is inapposite.

Signal then inexplicably spends several pages on *The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006).  In *Coca-Cola*, competitive bottlers sued Coca-Cola for allegedly using calendar marketing agreements with retailers to unreasonably restrain trade, monopolize the market and attempt to conspire to monopolize the market in violation of the

Texas Free Enterprise and Antitrust Act ("TFEAA") of 1983 and the antitrust laws of three other states covering the relevant marketing region. *Id.* at 674. The Texas Supreme Court held that the TFEAA does not support extraterritorial relief in the absence of showing that such relief promotes competition in Texas or benefits Texas consumers. *Id.* at 674-75. The Court also held that Texas courts, as a matter of interstate comity, will not decide how another state's antitrust laws and policies apply to injuries confined to the other state. *Id.* at 675. Finally, the Supreme Court found that the plaintiffs failed to show substantial harm, real or threatened, to competition in the relevant market as a result of the defendants' conduct. *Id.* In the present case, Joseph and his fellow Plaintiffs allege in great factual detail that Signal's misrepresentations, breaches of contract, and civil rights violations led directly to enormous harm being inflicted on the Plaintiffs in Texas. The *Coca-Cola* case could hardly be more inapposite.

Finally, Signal cites *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010), as the "correct framework for analyzing the dispute between the parties concerning the extraterritorial scope of the common law claims" alleged in the Complaint. Mot. to Dismiss at 5 n.4, ECF No. 70. *Morrison*, however, has no relevance to the issues in this case. *Morrison* concerned the extraterritorial application of the Securities and Exchange Act of 1934, and involved "foreign plaintiffs suing foreign and American defendants for misconduct in connection with securities traded on foreign exchanges." 130 S. Ct. at 2875. *Morrison* therefore has no bearing on the question of the plausibility of state law claims pursued under supplemental jurisdiction.

The Court in *Morrison* characterized the dispute as involving "*some* domestic activity." By contract, the Complaint in this case alleges much more than "*some*" activity in Texas. Plaintiffs were lured to Texas, worked in Texas, and suffered damages in Texas. Texas is the

forum in which the Plaintiffs' relationship with Signal was centered.  Signal's motion should be denied.

**C.     PLAINTIFFS' COMPLAINT STATES SUFFICIENT FACTS THAT PLAINTIFFS' CIVIL RIGHTS WERE VIOLATED IN TEXAS.**

Signal's claim that Plaintiffs' Civil Rights Claims should be dismissed because the alleged facts supporting such claims occurred abroad also ignores the factual allegations in Plaintiffs' Complaint.   Plaintiffs' Complaint unequivocally alleges that Signal subjected Plaintiffs to discriminatory and odious living and working conditions at the Texas Labor Camp**.** Compl. ¶¶ 206-231, 349-357, ECF No. 64.   Assuming these facts to be true, Plaintiffs have alleged sufficient facts to state a claim that Plaintiffs' Civil Rights were violated in Texas.   There is no indication or allegation that the basis for Plaintiffs' Civil Rights Claims took place in India, nor does Signal allege any facts to the contrary.[7]   Signal offers no plausible grounds for dismissing Plaintiffs' Civil Rights Claims.

Among the allegations relevant to Plaintiffs' Civil Rights Claims, the Complaint alleges Plaintiffs were forced to live in the Texas Labor Camp, which was a guarded labor camp in Orange, Texas, surrounded by a fence. *Id.* ¶ 207. The Texas Labor Camp was located in an isolated industrial area, miles removed from shopping areas, places of worship, public transportation or residential communities.  *Id.*

The Texas Labor Camp was overcrowded, with up to twenty-four men housed in each bunkhouse and made to sleep in two-tiered bunk beds.  *Id.* ¶ 211.   Texas Labor Camp

---

[7] Moreover, even if Signal did allege such facts, these facts would not be appropriate for consideration at the motion to dismiss stage inasmuch as this Court "may not look beyond the four corners of the plaintiff's pleadings."  *Whiddon v. Chase Home Fin., LLC,* 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009) (citing *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir. 1999)).

bunkhouses had insufficient toilet and bathing facilities for twenty-four men, one or two toilets per bunkhouse, resulting in long lines for the bathrooms before and after work shifts.  *Id.* ¶ 212.

Non-Indian Signal employees were not required to live at the Texas Labor Camp.  *Id.* ¶ 219.  The Plaintiffs perceived the work environment created by Signal at the Texas Labor Camp to be hostile, abusive, and discriminatory on the basis of their race and alienage.  *Id.* ¶ 354. Signal subjected Plaintiffs to unfair skills testing and re-testing, on-the-job discipline, layoffs, periods without work, inadequate safety precautions, unfavorable job assignments, inequitable evaluation processes, and other adverse employment actions to which non-Indian and United States citizen workers were not similarly exposed.  *Id.* ¶ 220.  Signal's Texas Labor Camp personnel and supervisors frequently used offensive language while speaking with or referring to Plaintiffs and regularly insulted Plaintiffs because of their race and/or alienage.  *Id.* ¶ 221.

Plaintiffs believed they had no choice but to continue working at the Texas Labor Camp despite deplorable working and living conditions.  *Id.* ¶ 218.  Plaintiffs' continuing dependence on Signal for their present and future immigration status, their continuing high levels of indebtedness, and other factors reasonably led Plaintiffs, whose employment had not been terminated by Signal, to fear serious harm and abuse of the legal process if they left Signal's employ.  *Id.* ¶ 274.  Plaintiffs reasonably felt that they had no choice but to continue working for Signal at the Texas Labor Camp.  *Id.* ¶ 283.  No other non-Indian workers at the Texas Labor Camp were subjected to these deplorable conditions, and no other non-Indian workers were subjected to such fear of serious harm and abuse.  *Id.* ¶¶ 220, 350.

Based on the above allegations, Signal cannot plausibly argue the Complaint refers only to facts that occurred abroad.  Plaintiffs' Complaint adequately alleges facts to support their Civil Rights Claims.  The Complaint clearly alleges that *all* of these activities occurred at Signal's

Texas Labor Camp.[8]   Assuming the facts to be true—as the Court must—Plaintiffs' Complaint pleads sufficient facts to state a plausible claim that Plaintiffs' civil rights were violated in Texas. This Court should deny Signal's attempt to dismiss Plaintiffs' Civil Rights Claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985.

## V.   CONCLUSION

Signal asks this Court to dismiss Plaintiffs' Common Law and Civil Rights Claims by misconstruing the Complaint as alleging only harms and abuse abroad.   This is a gross mischaracterization of the allegations against Signal in the Complaint.   Plaintiffs' Complaint alleges sufficient facts to illustrate that Signal breached its contractual obligations to Plaintiffs in Texas, committed tortious acts against Plaintiffs in Texas, and that Texas law would therefore apply to Plaintiffs' Common Law Claims.

Similarly, the Complaint clearly alleges that Signal subjected Plaintiffs to discriminatory, offensive, hostile, and abusive living and working conditions in Signal's Texas Labor Camp. While Signal may dispute the merits of these claims, it cannot dispute that such factual allegations, which are presumed to be true at this early stage of the case, state plausible Civil Rights Claims.   That is the end of the inquiry into the allegations supporting Plaintiffs' Civil Rights Claims.

---

[8] Signal makes repeated references to the *David* complaint, a complaint that does not involve the Plaintiffs' Common Law Claims or Plaintiffs' Civil Rights Claims, and which is pending in a different jurisdiction.  Mot. to Dismiss, ECF No. 70; *see also David v. Signal Int'l, LLC*, Case No. 08-cv-1220, 2012 U.S. Dist. Lexis 114247 (Jan. 3, 2012).   *David* does not support Signal's Motion here.  First, the basis for Plaintiffs' Civil Rights Claims is not based on the "recruitment fees," but the inhumane living and working conditions at the Texas Labor Camp.  Mot. to Dismiss, ECF No. 70.  Second, the Complaint in the current case did not incorporate or state the same allegations as the complaint in *David*.   Accordingly, this Court should ignore the suggestion in Signal's Motion to Dismiss that "Signal's experience with these litigants is that they have maintained that the recruitment process violated § 1981 abroad and that this gives rise to a corresponding liability on Signal's part."

Finally, Signal's assertions regarding Indian law are irrelevant.  Whether Texas law, Indian law, or another state's law applies in this forum would be a legal conclusion for the Court and should be briefed by the Parties at the appropriate stage.  It is not appropriate to resolve this issue now through a motion to dismiss.

A motion to dismiss is not the procedure to resolve factual disputes or the substantive merits of a party's claim.  The Complaint unquestionably pleads sufficient facts to support the Plaintiffs' Common Law Claims and Civil Rights Claims.  Plaintiffs respectfully request the Court deny Signal's motion to dismiss in its entirety.

DATED:  February 18, 2014.


### SUTHERLAND ASBILL & BRENNAN LLP

/s/  Daniella D. Landers
Daniella D. Landers (Texas Bar No. 24026260)
1001 Fannin Street, Suite 3700
Houston, Texas  77002-6760
Telephone:  (713) 470-6100
Facsimile:  (713) 654-1301
John H. Fleming
Keith J. Barnett
Gabriel A. Mendel
Kurt Lentz
Kara D. Duffle
Sheena Paul
Teresa L. Sulmers
(admitted by *pro hac vice*)
999 Peachtree Street, NE, Suite 2300
Atlanta, Georgia  30309-3996
Telephone:  (404) 853-8000
Facsimile:  (404) 853-8806
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2014, I electronically filed the foregoing **Plaintiffs'**

**Response in Opposition to Motion of Signal Defendants to Dismiss Pursuant to Fed. R. Civ.**

**P. 12(b)(6)** with the Clerk of the Court using the ECF system, which sent notification of an

electronic filing to all CM/ECF participants.

I further certify that on February 18, 2014, I served a true and correct copy of the

foregoing document upon the below-named Defendants by depositing a copy of same in the U.S.

Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Michael Pol
> 10085 Doris Deno Avenue
> D'lberville, MS 39532
>
> Global Resources, Inc.
> c/o Michael Pol
> 10085 Doris Deno Avenue
> D'lberville, MS 39532
>
> Mr. Billy Wilks
> 9136 Heather Lane
> Moss Point, MS 39562

I further certify that on February 18, 2014, I served a true and correct copy of the

foregoing document upon the below named Defendants by forwarding a copy to them via

International Mail, with sufficient postage thereon to insure delivery, and properly addressed as

follows:

> Sachin Dewan
> Dewan Consultants Pvt. Ltd.
> 708, Sagar Tech Plaza
> Andhere Kurla Road
> Sakinaka Junction, Andheri (E)
> Mumbai 400 072, India

Dewan Consultants
Dewan Consultants Pvt. Ltd.
708, Sagar Tech Plaza
Andhere Kurla Road
Sakinaka Junction, Andheri (E)
Mumbai 400 072, India


Indo-Ameri Soft L.L.C.
Vijaya Roa (Registered Agent)
c/o Kurella Rao
#6 Isla Road, Unity Zone
Dangriga, Stann Creek Dist., Belize


Kurella Roa
#6 Isla Road, Unity Zone
Dangriga, Stann Creek Dist., Belize


*/s/ Daniella D. Landers*
Daniella D. Landers

-2-