IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| BIJU MUKRUKKATTU JOSEPH, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SIGNAL INTERNATIONAL LLC, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. <br> 1:13-cv-00324-RC-ZJH |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO SIGNAL'S OBJECTIONS (DOC. 224) TO
MAGISTRATE'S REPORT & RECOMMENDATION (DOC. 219)**

**I.     Overview**

In a carefully reasoned Report and Recommendation, Magistrate Judge Hawthorn recommended denying the Signal Defendants' ("Signal") motion for partial summary judgment. (Doc. 219, the "Report" or "Mag. Rep.") Signal has objected to the Report pursuant to LR CIV-72(c) and Fed. R. Civ. P. 72(b)(2). None of Signal's Objections has merit. The Report should be adopted by this Court.

*First*, regarding the Ku Klux Klan Act of 1871 (42 U.S.C. § 1985(3) or "§ 1985(3)"), Signal accuses the Report of "flawed reasoning" for supposedly failing to rely on *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378 (1979). But the Report acknowledges *Novotny* for the very principle cited by Signal in its Objections. Signal's various other arguments under § 1985(3) were waived or are irrelevant.

*Second*, regarding the Racketeering Influenced and Corrupt Organizations Act's ("RICO") so-called "distinctness requirement," the Report's thorough analysis shows how Signal misconstrued the Complaint and the relevant case law. Moreover, the Report's recommendation turned on Signal's failure to carry its burden to cite record evidence showing that Signal, a RICO

"person," is not distinct from the two alleged RICO "enterprises." Signal's Objections do not cure its failure to cite supporting record evidence to support its contention.

*Finally*, the Report correctly determined that RICO and the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") both reach Signal's alleged conduct, as it was "domestic in nature" and not extraterritorial. The Report determined this is the case regardless of which circuit test is applied. Signal offers no serious response to this determination.

Accordingly, the Report should be adopted.

## II. Plaintiffs' Response to Signal's Objections Regarding Section 1985(3)

Signal contends the Report suffers from "flawed reasoning" because it "neither acknowledges *Novotny* nor its evaluation of § 1985(3) and how it might, if at all, embrace the TVPA." (Signal Obj. 2.) This contention is baseless. The Report acknowledges *Novotny* for the very principle cited in Signal's opposition. (Mag. Rep. 30) (citing *Great Am. Fed. Savs. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) for its holding "that the right to be free from workplace discrimination under Title VII was not actionable under § 1985(3).")

Signal objects that the Report did not rely on *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261 (5th Cir 2001), a Title VII sexual discrimination case. (Signal Obj. 1-2.) As a preliminary matter, Signal did not raise this case in its original brief or in its reply brief. (Doc. 161; Doc 187.) Signal has therefore waived this argument. *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994). *Cupit* relied on *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990-991 (1st Cir. 1988), for the proposition that a party "has a duty to put its best foot forward" before the Magistrate Judge and must "spell out its arguments squarely and distinctly." Consistent with these cases, "*de novo* review before the district court upon filing objections to the Report and Recommendation of the Magistrate Judge did not entitle

the party to raise issues at that stage that were not adequately presented to the Magistrate Judge." *Paterson-Leitch*, 840 F.2d at 991.

Regardless, Signal's argument is irrelevant. Plaintiffs do not rely on § 1985(3) to redress a sexual discrimination claim. Plaintiffs instead urge a conclusion that private conspiracies to violate the TVPRA, specifically 18 U.S.C. §§ 1589 (forced labor) and 1590 (trafficking), where motivated by racial animus, are actionable under § 1985(3). The Report agreed following a thorough discussion of the issue. (Mag. Rep. 28-31). The Report correctly concludes that "because § 1985(3) protects the right to be free from involuntary servitude, and §§ 1589 and 1590 define and outlaw modern day manifestations of involuntary servitude and slavery, it follows that conspiracies to violate these statutes are actionable under § 1985(3)." (*Id.* at 29-30.) Signal offers no substantive response to this well-reasoned conclusion.[1]

Signal makes vague and conclusory arguments regarding a supposed "disharmony" between the civil rights vindicated by § 1985(3) and "the criminal TVPA." (Signal Obj. 2.) This argument is waived, as Signal did not raise this issue in its original brief or in its reply brief. (Doc 161; Doc. 187.) *Cupit*, 28 F.3d at 535 n.5. Moreover, the argument is irrelevant as

---

[1] In a footnote, Signal rehashes – with no analysis – the concern of the *David* court that allowing § 1985(3) to vindicate rights created by §§ 1589 and 1590 will "transform" § 1985(3) into a "general federal tort law." (Signal Obj. 3 n.2.) The Report addresses – and rejects – the concerns of the *David* court. (Mag. Rep. 30-31.) Signal acknowledges the disagreement, but otherwise does not respond to the Report's analysis on the issue.

Signal also states that "[n]onetheless, the lower Court's Report and Recommendation hold that a statute passed in 2000 may retroactively redefine the rights identified and protected by § 1985(3)." (Signal Obj. 2.) Signal appears to be taking issue with the idea that a statute passed later in time can modify a statute passed earlier in time. To the extent that Signal does so, Plaintiffs argue that it is fundamental that Congress is "free to repeal the earlier statute, to exempt the current statute from the earlier statute, [or] to modify the earlier statute . . ." *Dorsey v. United States*, 132 S. C.t. 2321, 2332 (2012). As the Report found, the Victims of Trafficking and Violence Protection Act of 2000 broadened the definition of involuntary servitude under § 1985(3) to "include cases in which persons are held in a condition of servitude through nonviolent coercion." (Mag. Rep. 26-27.)

Congress created a civil remedy for alleged victims of trafficking. 18 U.S.C. § 1595. Nothing in *Novotny* or *Horaist* implies otherwise.

Finally, Signal cites to *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000), a civil RICO case. *Williamson* notes that courts construing the requirements of a civil RICO violation can look to criminal RICO precedent. *Williamson* would be tangentially relevant if Signal, for example, relied on a criminal TVPRA decision in its briefs. Signal does not. Otherwise, *Williamson* offers no basis for disputing the Report's analysis of § 1985(3).

### III. Plaintiffs' Response to Signal's Objections Regarding the So-Called "RICO Distinctness Requirement"

To establish liability under 42 U.S.C. § 1962(c), a plaintiff must prove the existence of two distinct entities: a RICO "person" and a distinct RICO "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In its motion for summary judgment, Signal argues Plaintiffs' Complaint failed to satisfy this so-called "distinctness requirement." The Report rejects this argument (Mag. Rep. 14-18), as did the court in *David*. (Doc. 213-5) (finding in *David* nearly identical RICO enterprises, which included Signal as a member, did not violate the distinctiveness requirement). While a RICO "enterprise" cannot just be the RICO "person" by a different name, a plaintiff may allege that a RICO "person" is also a *member* of the RICO "enterprise." That is the case here.

Signal makes no effort to distinguish or challenge the Report's authorities holding that RICO plaintiffs can name the same entity as both a RICO "person" and a *member* of a RICO "enterprise." For example, the Report cites *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994), for the proposition that alleging a corporation as a member of an enterprise "does not foreclose the possibility of a corporate entity being held liable as a defendant under Section 1962(c) where it associates with others to form an enterprise that is

sufficiently distinct from itself." (Mag. Rep. 17). Signal simply ignores this and other authority, including the court in *David*.

Nowhere in the Complaint do Plaintiffs allege that Signal merely "enterprised with itself," and the Report correctly concluded that Signal misconstrued the Complaint to suggest otherwise. The Complaint clearly shows Signal was one of a number of members of two different RICO enterprises. (Doc. 208 ¶¶ 306-321.) Plaintiffs' response brief provided a detailed chart of both the RICO persons and the two RICO enterprises. (Doc. 183 at 26-27.) The Report further concluded Signal did not carry its burden where it failed to cite any record evidence "that the alleged members did not form an enterprise." (Mag. Rep. 18.) The Objections did not cure this evidentiary failing.

Signal objects that two specific cases – *Crowe v. Henry*, 43 F.3d 198 (5th Cir. 1995), and *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404 (5th Cir. 1990) – "are not mentioned" in the Report. (Signal Obj. 3-4 n.3.) While the Report does not cite to *Crowe* and *Landry*, it does cite subsequent cases that address them. For example, *Bradley v. Phillips Petroleum Co.*, 527 F. Supp. 2d 625 (S.D. Tex. 2007), which the Report discusses in detail, relies on *Crowe* and *Landry* in its analysis of RICO "persons" and relies on *Landry* in its analysis of RICO "enterprises." *See* 527 F. Supp. 2d at 647-48, 651-52. Signal fails to show why *Bradley*, or other cases relied on by the Report such as *Heden v. Hill*, 937 F. Supp. 1230 (S.D. Tex. 1996) and *David*, misstate the law in their analysis of RICO "persons" and RICO "enterprises."

IV. **Plaintiffs' Response to Signal's Objections Regarding the Report's Analysis of the Extraterritorial Application of RICO and TVPA**

Signal moved for summary judgment on the grounds that the Complaint sought an "impermissibly, extraterritorial application of the TVPA and RICO." (Signal Obj. 4). The Report rejects each argument in thorough and well-considered analyses. (Mag. Rep. 5-7) (regarding the

supposed extraterritorial application of TVPA claims); (Mag Rep. 18-22) (regarding the supposed extraterritorial application of RICO claims).

Signal does not respond to the overwhelming majority of the Report's discussion regarding the extraterritorial application of the TVPRA and RICO claims. Signal resigns itself to a one-page discussion of *Morrison v. National Australian Bank Ltd.*, 561 U.S. 247 (2010).[2] (Signal Obj. 4.) *Morrison* was not a RICO or TVPA case, but considered whether § 10(b) of the Securities Exchange Act of 1934 applied domestically or extraterritorially.

Subsequent courts have examined the extraterritoriality concerns of *Morrison* in the context of TVPA and RICO cases. In *Tanedo v. East Baton Rouge Parish School Board*, No. SA CV 10-01172, 2012 WL 5378742, at *6 (C.D. Cal. Aug. 27, 2012), the court concluded the TVPA was not being applied extraterritorially where the victims were trafficked *to* the United States for forced labor *in* the United States. The Report similarly concluded that where Plaintiffs are eventually brought to the United States to work, "imposing liability under § 1590 requires only a domestic application of the statute." (Mag. Rep. 6-7; *see also* Doc. 213-3 at 2-3) (determining in *David* nearly identical claims are not extraterritorial). Signal does not distinguish *Tanedo* or *David* or the Report.

The Report also rejected Signal's "overly simplistic" RICO argument. (Mag. Rep. 19.) The Report determined the RICO conduct in this case is "partly foreign and partly domestic." *Id*. The Report cited various decisions that examined what conduct RICO reaches in light of the *Morrison* decision. *See, e.g., European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 136 (2d

---

[2] Signal arguably waived the argument by waiting until its Objections to engage in an extended discussion of *Morrison*. The only reference to *Morrison* in its Motion for Summary Judgment is a cite to *Morrison* in a block quote. (Doc. 161 at 16.) Plaintiffs discussed *Morrison* and its progeny at length in their response. (Doc. 183 at 30-33.) Signal offered no reply to this discussion. (Doc. 187.)

Cir. 2014); *United States v. Chao Fan Xu*, 706 F.3d 965, 974-78 (9th Cir. 2013). Regardless of which approach one uses – whether the Second Circuit test or the Ninth Circuit test – the Report makes clear that Signal's conduct is domestic in nature. (Mag. Rep. 19-22.) This is consistent with the Court in *David*, analyzing nearly identical alleged conduct. (Doc. 213-5 at 4) ("Under either the Second Circuit approach or Ninth Circuit approach, the Court finds that application of RICO in this case is not extraterritorial.").

Although Signal limited its objections regarding the extraterritorial reach of the TVPA and RICO to a discussion of *Morrison*, Signal failed to even respond to the Report's careful analysis of the TVPA and RICO in light of the Supreme Court's analysis in *Morrison*. Signal's objection regarding extraterritoriality also fails.

## V.   Conclusion

Having received no serious objection from Signal, the Report should be adopted in its entirety.

Respectfully submitted this 9th day of March 2015.

>  */s/ Daniella D. Landers*
>  Daniella D. Landers (Texas Bar No. 24026260)
>  Sutherland Asbill & Brennan LLP
>  1001 Fannin Street, Suite 3700
>  Houston, Texas 77002-6760
>  Telephone: (713) 470-6100
>  Facsimile: (713) 654-1301
>  daniella.landers@sutherland.com
>
>  and

        John H. Fleming
        Keith J. Barnett
        Bryan M. Ward
        Kurt Lentz
        Travis J. Mock
        Kara D. Ford
        Heather Neimeyer
        Mary Beth Martinez
        (admitted *pro hac vice*)
        Sutherland Asbill & Brennan LLP
        999 Peachtree Street NE, Suite 2300
        Atlanta, Georgia 30309-3996
        Telephone: (404) 853-8000
        Facsimile: (404) 853-8806

        ***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2015, I electronically filed the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO SIGNAL'S OBJECTIONS (DOC. 224) TO MAGISTRATE'S REPORT AND RECOMMENDATION (DOC. 219)** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all ECF participants.

I further certify that on March 9, 2015, I served a true and correct copy of the foregoing document upon the below-named Defendants by depositing a copy of same in the U.S. Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

>Michael Pol
>Global Resources, Inc.
>c/o William P. Wessler, Esq.
>William P. Wessler, Attorney at Law
>1624 24th Avenue
>Gulfport, MS 39501-2969

>Mr. Billy Wilks
>9136 Heather Lane
>Moss Point, MS 39562

I further certify that on March 9, 2015, I served a true and correct copy of the foregoing document upon the below-named Defendants by forwarding a copy to them via international mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

>Indo-Ameri Soft L.L.C.
>Vijaya Roa (Register Agent)
>c/o Kurella Rao
>#6 Isla Road, Unity Zone
>Dangriga, Stann Creek Dist., Belize

>Kurella Rao
>#6 Isla Road, Unity Zone
>Dangriga, Stann Creek Dist., Belize

*/s/ Daniella D. Landers*
Daniella D. Landers