IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| BIJU MUKRUKKATTU JOSEPH, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>SIGNAL INTERNATIONAL LLC, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No.<br>1:13-cv-00324-RC-ZJH |

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO SIGNAL'S MOTION TO RE-DEPOSE PLAINTIFFS**

### **INTRODUCTION**

Signal's Motion to Re-Depose Plaintiffs on T-Visa Evidence (Doc. 242) in the present circumstances is a wholly unjustified extension of Signal's consistent strategy of abuse and intimidation of the victims of its trafficking scheme. Signal itself has conceded from the outset that these individuals were charged exorbitant fees and "sold a bill of goods" about the possibility of obtaining permanent residence. Signal has repeatedly attempted to blame these bad acts on its recruiting agents. And yet, throughout this litigation, Signal has consistently threatened the Plaintiffs – as it did while they were being forced to live in man camps in Orange and Pascagoula – by making it clear that if they complain about Signal's mistreatment, Signal will try to have them deported back to India. Signal's Motion is another part of its continued effort to intimidate and harass its former employees with more depositions, and should be denied for a number of reasons, each of which is independently sufficient.

**(1)** The testimony Signal seeks to elicit – about the Plaintiffs' experiences in possibly seeking T-Visas – is highly sensitive and intimidating given the fact that Signal is still threatening, in pleadings with this Court, to seek deportation based on possible testimony. (*See, e.g.*, Signal's Supp. Resp. to Mag. Mem. and Order on Mot. to Compel, Doc. 193 at 2.) Perhaps

more importantly, the testimony would also be irrelevant to any claims or legitimate defenses in the case, and would lead to jury confusion.  Raising the subject of T-Visas at trial would necessitate distracting mini-trials on, among other things, the question of whether the government was reasonable when it concluded that Plaintiffs were in fact trafficked by Signal, which it must do before issuing a T-Visa.  For these reasons and others, Plaintiffs, through a Motion in Limine to be filed by March 12, will seek to exclude from trial any evidence of post-Signal employment and immigration status, just as the court did in the recent *David* trial in New Orleans.  (*David* Doc. 2134, No. 08-1220 (E.D. La. Jan. 1, 2015), attached hereto as Ex. A.)

      This Court's Order on discovery of certain T-Visa documents did not suggest that any such evidence would necessarily be admissible at trial, which is of course a very different matter from whether the evidence is discoverable.  (Order, Doc. 148.)  If the Motion in Limine to be filed March 12 were to be granted, there would be no reason for the additional depositions requested by Signal, mooting Signal's Motion and this Response.  If the Motion in Limine were to be denied and these depositions were to be permitted, Plaintiffs respectfully suggest that the depositions be taken between April 2 and April 6, in Beaumont.  This is the least expensive option and would benefit all parties, excepting any party whose objective is purely to harass and intimidate.

      **(2)**    Signal's request for costly, additional depositions on the eve of trial is inappropriate in light of Signal's admission that it is insolvent as a result of the *David* verdict, and in light of Signal's confirmation that it will be unable to pay any verdict, or any award of attorneys' fees in this case, no matter what the jury ultimately decides.  It is one thing for Plaintiffs to consent to additional depositions where there is a legitimate reason for holding them and where there is a possibility of recovery, both for Signal's wrongs and for Plaintiffs'

attorneys' fees and expenses which would be necessary to defend the depositions. But that is not the case here, where the purpose of the depositions is merely to harass and intimidate, and where the Plaintiffs will shoulder the expense of the depositions regardless of whether they prevail at trial due to Signal's insolvency.

**(3)** Signal has taken deposition testimony from each of these Plaintiffs for two or three days each. Plaintiffs incurred substantial expenses to attend these depositions due to missed work, travel expenses, and high levels of stress. Signal now wants to force Plaintiffs to incur more expenses, and create discord in the midst of the efforts of Plaintiffs and their counsel to prepare for trial, all without having articulated a legitimate reason for doing so. And the potential for harassment in these depositions is especially high because the purpose of the examination will not be to discover admissible evidence. Rather, it will be to determine whether Signal has any arguable, pre-textual grounds that would allow it to report Plaintiffs to the government for alleged T-Visa fraud in an effort to make good on its threat to have Plaintiffs deported.

**(4)** Signal has pointed to no new information in the written T-Visa materials, which were produced last week that would remotely support the fanciful conspiracy theories Signal has set out involving Plaintiffs' T-Visa status. Signal is merely using these T-Visa materials as pre-textual basis to harass the Plaintiffs about their current immigration status through additional depositions. Even if the Court were to consider Signal's fictional alternate universe, in which the Plaintiffs are the real bullies and have been plotting from the outset to lie about Signal and its recruiters (bearing in mind the fact that Signal has already conceded that the Plaintiffs' allegations about the recruiters are true), Signal already has the T-Visas, and Signal has not even

attempted to articulate why its request for additional depositions is reasonably calculated to lead to the discovery of admissible evidence.[1]

For all of these reasons, the Court should deny or at least defer Signal's Motion to Re-Depose Plaintiffs.

## ARGUMENT

A. Evidence Regarding Post-Signal Immigration Status and Employment History Should Not Be Admissible At Trial.

This Court's Order (Doc. 148) granting in part Signal's Motion to Compel as to T-Visa documentation addressed possible discovery of documents, and ordered that some be produced. The Order expressly did not determine "whether such evidence will be admissible at trial, . . ." (Order at 9.)

Plaintiffs respectfully submit that any evidence regarding post-Signal immigration or employment status, and any information about T-Visa applications, should be excluded at trial. Plaintiffs anticipate filing by tomorrow's deadline a Motion in Limine specifying the grounds for that exclusion. In summary, the grounds are as follows:

1. Signal has Indicated Its Intention to Use the Testimony to Seek to Have Plaintiffs Deported, and the Evidence Should be Excluded on *In Terrorem* Grounds.

The Order considered the *in terrorem* principle, which had led the New Orleans court to preclude discovery and admissibility of post-Signal immigration status and employment documents. As to discovery of documents, the Order concluded that while concern regarding threats to immigration status were real, that the balance could be struck in favor of discovery,

---

[1] What's more, part of the T-Visa application is a declaration in which an applicant discusses the circumstances and conditions making out his or her trafficking claim. Signal has had those declarations, to the extent they described events and circumstances before each Plaintiff left Signal, for many months – having received them well before the depositions of the Plaintiffs were originally taken.

4

particularly where substantial limitations could be put on any use of the documents outside of this litigation. (Order at 11-17.)

Trial testimony of course is entirely different. Testimony on this subject presumably would be given in open Court, and Signal would be free to use any information that was obtained in discovery and subsequently repeated in Court in any manner it chose. And Signal has already told this Court and Plaintiffs how it intends to use the information. When Plaintiffs complain that Signal might misuse the information to seek to adversely affect Plaintiffs' immigration status, Signal did not deny it. Instead, Signal said that it felt that it had an "obligation" to take information to the government if Signal felt that it saw evidence of fraud in connection with a T-Visa application. (Signal's Supp. Resp., Doc. 193 at 2.)

Particularly as to trial testimony, then, Plaintiffs have a significant, legitimate concern that Signal will misuse any such information, and because of this, the *in terrorem* principle should trump arguments as to the admissibility of this evidence.

### 2. Testimony About T-Visa Applications Would Be Irrelevant to the Claims and Defenses in the Case.

Signal has conceded that a number of Plaintiffs' allegations regarding being defrauded and being trafficked are accurate. For example, Richard Marler sent an e-mail in response to a query from National Public Radio in which he confirms that Signal's H-2B workers, including the Plaintiffs, had been required to pay "too much money" and had been "sold a bill of goods" regarding the possibility of permanent residence. (Marler e-mail (HRT_SIA000757381) and Signal Press Release (HRT_SIA000757372), attached hereto as Ex. B.) Signal sought to blame this wrongdoing on its "unscrupulous" recruiters – Burnett, Dewan, and Global Resources – which is a problem for Signal because these recruiters were also indisputably Signal's agents. In any event, Signal has, from the very beginning, recognized the fact that these individuals were

5

badly mistreated. Signal cannot now argue that T-Visa evidence is relevant to support its conspiracy theory that the Plaintiffs have been lying from the beginning.  It has already admitted that the Plaintiffs *were* in fact victimized, it just tried to blame other parties, who happened to be its agents at the time.

The Order identified other ways in which the T-Visa application documents might conceivably lead to admissible evidence, but there was no suggestion in the Order or in anything Signal has filed about how testimony from the Plaintiffs about the T-Visa application could be relevant.

3. Evidence About T-Visas Would Necessitate Inefficient Mini-Trials.

In granting an application for a T-Visa (which the Order suggests happens in around 70% of the applications) (Order at 15 n.4), the government makes a determination that the applicant has established that he has in fact been the victim of trafficking.  If Signal were permitted to suggest its "motive" theory to the jury – that theory presumably being that Plaintiffs were lying to the government when they said they had been trafficked to receive a T-Visa – Plaintiffs in fairness should then be permitted to explain fully what is involved in the T-Visa process, how the government considers the applications, who the decision makers are, and so forth.  This would essentially become a mini-trial on the issue of whether the government was correct in determining that the Plaintiffs were victims of trafficking.  But this should not be a trial on the issue of whether the government was correct in determining whether the Plaintiffs were trafficked.  This should be a trial about whether Plaintiffs were defrauded, trafficked, discriminated against, or otherwise wronged by Signal and its co-Defendants.

        4.      <u>A Much Less Burdensome and Expensive Alternative Is Available</u>.

As noted, the foregoing is a summary of the Motion in Limine Plaintiffs expect to file tomorrow. If that Motion in Limine were to be granted, the additional depositions sought by Signal would be unnecessary. On the other hand, if the Court concludes that testimony on T-Visa applications might have some relevance at trial after reviewing the Motion in Limine, Plaintiffs respectfully suggest the following: Plaintiffs will all be in Beaumont in the week leading up to the trial. All parties will have a number of lawyers in Beaumont which would make it relatively easy to hold the type of brief depositions of each of the Plaintiffs requested by Signal. Given the current proximity to trial, this would be a much less burdensome alternative, even if all agreed that the depositions had to be taken, compared to all parties taking the entire weekend of March 22 to attend depositions. And because the depositions are likely never to be necessary, the Court should deny Signal's present Motion, perhaps without prejudice so that Signal can move again if Plaintiffs lose their Motion in Limine to be filed March 12.

        B.      <u>Signal Should Not be Permitted to Extend Its Campaign of Harassment Against Plaintiffs</u>

Signal is seeking four more hours each from these four individuals, whom Signal has deposed for two or three days each already. The T-Visa declarations, to the extent they related to recruitment and employment while at Signal, were fully available for questioning at the deposition. The stated purpose of Signal's proposed additional depositions is to inquire into the Plaintiffs' T-Visa applications and current immigration status. As Signal is well aware, this is an area of extreme sensitivity on the part of the Plaintiffs, and that is doubtless the reason for Signal's insistence on these depositions. Signal's tactics of harassment and intimidation of its

trafficking victims have been fully on display as this litigation, and in related litigation, has proceeded.[2]

The harassment in this case has become particularly abusive due to the fact that the threat, as Signal has made clear to this Court, is that Signal will use the information to seek to have Plaintiffs deported. (Signal's Supp. Resp., Doc. 193 at 2.) In fact, the threat of sending these Plaintiffs back to India has been central to Signal's campaign of control through intimidation from the beginning. (*See, e.g.*, Baby Dep. at 25:15-26:8, 42:7-43:1, 61:16-62:7, 64:8-16, 132:23-133:4, 151:6-11, 177:4-17, attached hereto as Ex. E.)

Plaintiffs respectfully submit that the parties are at a point in this litigation when Signal should be prevented from further harassment of the Plaintiffs, and the parties should present to the jury their contentions and their evidence on whether or not Signal was the perpetrator of the wrongs alleged.

   C. <u>Signal is Insolvent, and Should Not Be Permitted to Impose Costs and Burdens on Plaintiffs that Signal Cannot Repay if it Loses</u>.

Plaintiffs of course have asserted very substantial damage claims against Signal, along with claims for attorneys' fees and expenses with respect to most counts of the Complaint. Plaintiffs feel these claims are substantially meritorious, just as they proved to be in the *David* trial completed last month in New Orleans. Plaintiffs have responded to very expensive discovery requests from Signal (including the aforementioned two to three-day depositions of each Plaintiff) without complaint, in part because Plaintiffs anticipate a substantial damages

---

[2] One emblematic moment in the *David* case, for example, came during the cross examination of *David* Plaintiff, Jacob Kadakkarappally, in which Signal's counsel elicited testimony from Mr. Kadakkarappally about the fact that he had taken a spoon from Signal's mess hall. (*See David* Trial Tr. at 708:8-709:25, attached hereto as Ex. C.) Mr. Kadakkarappally responded that he had only taken it so that he could eat his lunch because he could not use his hands, as there was no place to wash them before eating other than the portable toilet. *Id.* This cross-examination followed a long stretch of similar cross-examination that occurred at Mr. Kadakkarappally's deposition, during which counsel for the Defendant questioned Mr. Kadakkarappally about spoons, accusing Mr. Kadakkarrappally of theft – "[i]sn't it true that the workers were taking spoons out of the mess hall and putting them in their tiffin boxes?" (Kadakkarappally Dep. at 54:01 – 64:20, attached hereto as Ex. D.)

award and reimbursement for the fees and expenses Plaintiffs' counsel has incurred in those efforts.

Signal's Chief Financial Officer, Mr. Cunningham, appeared in the *David* trial in New Orleans and testified that Signal has less than $8,000,000 in cash, no credit facility, and is considering bankruptcy. (*David*, Trial Tr. at 2108:20, attached hereto as Ex. C.) Signal was then subjected to a jury verdict in the *David* case in the amount of over $12,000,000.

Signal has refused to offer any assurance to the *Joseph* Plaintiffs that Signal would have any ability to respond to any judgment the *Joseph* Plaintiffs might receive, much less to an award of attorneys' fees and expenses. Indeed, Signal has suggested that it cannot afford to seek to achieve a global settlement, or to post security against the *David* result. Signal's attempts to subject the *Joseph* Plaintiffs to additional expenses and stress, and to force counsel for the *Joseph* Plaintiffs to incur substantial additional expense are inappropriate given the fact that Signal has practically guaranteed that it will not be in a position to pay any verdict or fee award the *Joseph* Plaintiffs might obtain.

D.   <u>Signal Has Not Shown Any Particular Need for the Requested Depositions</u>.

The Order specified, with examples, the sorts of things Signal might possibly learn from the documents which could conceivably be relevant to the litigation. None of these examples, however, suggested any way in which *testimony* from the Plaintiffs on those subjects might be relevant. And Signal has not suggested, based on any of the documents produced relating to the T-Visas, how any testimony from the Plaintiffs might be necessary. Signal just wants to take them because it claims a right to do so.

Signal's conspiracy theories, which formed the basis for its initial Motion to Compel are preposterous. And Signal does not have a shred of testimony or a single document which

remotely suggests that any testimony from any of these Plaintiffs about their T-Visa applications would in any way support Signal's fanciful theories.

Plaintiffs emphasize that they did not object to the production of the documents initially because of any concern for impact on their claims or for any concern that the documents might support Signal's dream-sequence defenses. Instead, Plaintiffs were, and remain, very concerned due to the fact that Signal has vindictively threatened deportation to India as a means of intimidation and control of these Plaintiffs, and worry that it is also Signal's tactic in this litigation to seek to bully Plaintiffs into abandoning their claims.

Signal has the T-Visa documents. And it has not suggested to the Plaintiffs or to the Court any reasonable basis related to the documents produced that would make any testimony about them from Plaintiffs remotely necessary or useful.

For this independently sufficient reason, Signal's Motion to Re-Depose Plaintiffs should be denied.

## **CONCLUSION**

For the foregoing reasons, Signal's Motion to Re-Depose Plaintiffs should be denied. In the alternative, the Motion should be denied without prejudice with leave for Signal to renew the Motion after Plaintiffs' Motion in Limine with respect to T-Visa and other post-Signal immigration and employment information is denied.

Respectfully submitted, this 11th day of March, 2015.

[signature on following page]

*/s/ Daniella D. Landers*
Daniella D. Landers (Texas Bar No. 24026260)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002-6760
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
daniella.landers@sutherland.com


John H. Fleming
Keith J. Barnett
Bryan M. Ward
Kurt Lentz
Travis J. Mock
Kara D. Ford
Heather Neimeyer
Mary Beth Martinez
(admitted *pro hac vice*)
Sutherland Asbill & Brennan LLP
999 Peachtree Street NE, Suite 2300
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000
Facsimile: (404) 853-8806

***ATTORNEYS FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2015, I electronically filed the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO SIGNAL'S MOTION TO RE-DEPOSE PLAINTIFFS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all ECF participants.

I further certify that on March 11, 2015, I served a true and correct copy of the foregoing document upon the below-named Defendants by depositing a copy of same in the U.S. Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Michael Pol
> Global Resources, Inc.
> c/o William P. Wessler, Esq.
> William P. Wessler, Attorney at Law
> 1624 24th Avenue
> Gulfport, MS  39501-2969

> Mr. Billy Wilks
> 9136 Heather Lane
> Moss Point, MS 39562

I further certify that on March 11, 2015, I served a true and correct copy of the foregoing document upon the below-named Defendants by forwarding a copy to them via international mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Indo-Ameri Soft L.L.C.
> Vijaya Roa (Register Agent)
> c/o Kurella Rao
> #6 Isla Road, Unity Zone
> Dangriga, Stann Creek Dist., Belize

> Kurella Rao
> #6 Isla Road, Unity Zone
> Dangriga, Stann Creek Dist., Belize

*/s/ Daniella D. Landers*
Daniella D. Landers