IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| BIJU MUKRUKKATTU JOSEPH, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SIGNAL INTERNATIONAL LLC, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. <br> 1:13-cv-00324-RC-ZJH |

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF T-VISAS, RELATED DOCUMENTS, AND IMMIGRATION STATUS**

Plaintiffs are 46 individual Indian former H2B workers pursuing claims against Signal and others for labor trafficking, RICO violations, fraud, breach of contract and Civil Rights violations. Signal (and perhaps the other Defendants) seek to introduce evidence relating to Plaintiffs' T-Visa applications, after they left Signal, and regarding Plaintiffs' current immigration status. The evidence is extremely intimidating toward Plaintiffs, for reasons having nothing to do with the merits of their claim against Signal or Signal's defense. The evidence should thus be excluded on the basis of the *in terrorem* principle. In addition, the evidence is generally completely irrelevant, and to the extent it might have any probative value, that value is far outweighed by the prejudicial effect. The introduction of such evidence would necessitate wasteful and unnecessary mini-trials on side issues, such as the manner in which the Government determines whether a T-Visa application should be granted. The evidence should be excluded.

**I.      BACKGROUND**

Plaintiffs allege that they were trafficked by the Defendants. They allege that they were lied to about the possibility of permanent residence status and charged exorbitant fees. Signal has conceded from the outset that these allegations are true – Signal just seeks to blame the wrongdoing on the other Defendants.

Plaintiffs contend that Signal also required the Indian H2B workers such as Plaintiffs to pay over $1,000 per month to live in a "mancamp" with 24 other men to a trailer – and that this requirement applied <u>only</u> to the Indian H2B workers (not to any of Signal's worker of other races, national origins or immigration statuses).  Signal also concedes these allegations.  Plaintiffs allege that the conditions at the mancamp were terrible, and Signal disputes that allegation.

Plaintiffs all left Signal in 2007 or 2008.  Some were laid off by Signal and some left because of the terrible conditions and because at some point it became clear that the promise of a green card through Signal was a cruel and very expensive (for Plaintiffs) fraud.  Some Plaintiffs sought "T-Visas" after leaving Signal.  The Government grants a T-Visa to provide an immigrant resident status after that individual has persuaded the Government that he or she has been subjected to trafficking.  In some cases T-Visas can lead to green cards and permanent residence.

Signal sought discovery of Plaintiffs' T-Visa applications.  Plaintiffs produced their declarations supporting the T-Visas, in which Plaintiffs described their recruitment and their work at Signal.  Plaintiffs objected to producing the remainder of the T-Visa application, which contains sensitive answers to questions about Plaintiffs and their families and information about post-Signal employment and immigration status.  Signal moved to compel the T-Visa applications and substantial other information regarding Plaintiffs' post-Signal employment and immigration status.  Signal argued that the T-Visa applications, in particular, were relevant to "motive."

The Court granted in part and denied in part Signal's Motion to Compel. (Dkt. 148 ("the Order"). )  The Court ordered discovery of the T-Visa applications.  The Court recognized the *in terrorem* concerns, but found that some information in the T-Visa application could conceivably

be relevant. The Court recognized the sensitivity of the documents, and strictly forbid any use of the documents outside this case. The Order expressly did not rule on the admissibility of the T-Visa information at trial. (Order, at 9.) Plaintiffs appealed the Order, the District Court affirmed, and the T-Visa applications have been produced, pursuant to the strict limitations in the Order.

Signal has now indicated that it will seek to use the T-Visa applications, and the Plaintiffs' attempts to obtain them, at trial. Signal suggests two possible bases for introducing this evidence:

(1)   Signal suggests that the evidence shows that Plaintiff had a motive to exaggerate facts surrounding the lies Plaintiffs were told and the money Plaintiffs were required to pay (which Signal actually does not dispute), and the living and working conditions to which they were subjected by Signal; and

(2)   Signal believes that the information is relevant to damages, presumably on the theory that if Plaintiffs ultimately obtained what they were promised – a green card, or at least a T-Visa permitting U.S. residence – then they should not be able to recover damages for having been lied to by Signal and its co-defendants about the possibility of green cards.

Neither theory for admissibility remotely justifies the huge possible prejudice Plaintiffs may suffer if the evidence were to be admitted. And there are also other sound reasons this Motion should be granted.

## II.   ARGUMENT

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The probative value of the T-Visas and related documents to the claims and defenses in this case is slight, if any. Signal argues that the

documents support their specious argument that Plaintiffs manufactured their allegations against Signal in order to obtain the T-Visas. (Doc. 148, pp. 7-8.) Signal also suggests that information in the T-Visa applications may be relevant to any plans by Signal to paint its codefendants as the true wrongdoers. (*Id.*, p. 9.) Now, on the eve of trial, Signal has nothing to support its conspiracy theory that Plaintiffs manufactured their allegations against Signal in order to obtain T-Visas, even after deposing for three days each the four Plaintiffs whose claims are set to be tried first, with the full benefit of the declarations submitted with the T-Visa applications. (*See Id.*, p. 8 n.5.) In fact, Signal has previously acknowledged that Plaintiffs did not manufacture their allegations, and that Plaintiffs paid "exorbitant fees" and were "sold a bill of goods." (Doc. 251, Ex. B.) Moreover, in seeking to re-depose the four Plaintiffs for an additional half-day now that it has received the T-Visas and related documents, Signal does not identify any new information in the documents supportive of its theory. (Doc. 242.)

Whatever the probative value of the T-Visas and related documents might be, it is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and wasting time.

    A.    <u>The T-Visas and related documents should be excluded on *in terrorem* grounds.</u>

First, the T-Visas and related documents should be excluded because of the unfair prejudice admitting them would cause based on the *in terrorem* effect. In employment and trafficking cases, such as this, courts routinely recognize the *in terrorem* effect of a litigant's immigration status. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (upholding prohibition of discovery into immigration status due to chilling effect on plaintiffs' ability to assert their rights under Title VII); *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (prohibiting inquiry into plaintiff's immigration status as irrelevant to trafficking and involuntary servitude claims and because "[w]hen the potential for abuse of procedure is high, the Court can

and should act within its discretion to limit the discovery process, even if relevancy is determined"); *Potluri v. Yalamanchili*, No. 06-CV-13517, 2007 WL 2571980, at **3-4 (E.D. Mich. Sept. 4, 2007) (rejecting Defendants arguments and issuing protective order where "Defendants seem as intent on showing possible immigration visa violations and misrepresentations as they do showing any real value of the information to pursuing their breach of contract claims against Plaintiff."); *Flores v. Albertsons, Inc.*, No. CV100515, 2002 WL 1163623, at *6 (C.D. Cal. Apr. 9, 2002) (risk of harm to worker-plaintiffs outweighed defendant's need for immigration status related discovery in FLSA, fraud, and unfair business practices suit); *Barrera v. Boughton*, No. 3:07-CV-1436, 2010 WL 1240904, at * 5 ( D. Conn. Mar. 19, 2010) (refusing to allow immigration status-related discovery where "whatever value the information might hold as to impeachment is outweighed by the chilling and prejudicial effect of disclosure").  Courts also routinely exclude evidence of immigration status.  *See, e.g.*, *Cho v. Young Bin Café*, No. 10 Civ. 3785(HBP), 2013 WL 656468, at *4 (S.D.N.Y. Feb. 22, 2013) (granting plaintiff's motion in limine because her immigration status was not relevant to any of her claims or defenses thereto); *Berdejo v. Ideal Sys., Inc.*, No. 3:09-cv-0509, 2012 WL 3260422, at *1 (M.D. Pa. Aug. 8, 2012) (same).

      Signal has indicated that it intends to use the T-Visas and related documents to seek to affect Plaintiffs' immigration status adversely.  Indeed, Signal has warned that it "may have any affirmative obligation to communicate with the government" regarding the T-Visas and related documents. (Doc. 193, p. 2.)  The Court previously found that the *in terrorem* effect of producing the documents in discovery was lessened because T-Visas create a "safe harbor" for illegal immigrants who were victims of trafficking.  (Order, p. 14, 17.)  Signal seeks to do away with any safe harbor provided by the T-Visas to Plaintiffs.  Signal's thinly veiled threats to use

the T-Visas and related documents adversely will create a chilling effect that could affect not only Plaintiffs in this litigation, but also other victims of human trafficking, who may in the future choose not to bring valid claims against traffickers, because the effort could threaten the safe harbor provided by the T-Visas. The *in terrorem* effect of admitting the T-Visas and related documents substantially outweighs the slight relevance of the documents. As one court has explained in the related context of granting a protective order prohibiting discovery into immigration status:

> The harm in disclosing Plaintiffs' immigration status is significant and real. If disclosed, documented workers would fear either alteration to their immigration status or revealing immigration issues with family and friends; undocumented workers would fear criminal prosecution and deportation. Either way, farmhands would be reluctant to exercise their rights under existing state and federal laws for fear of repercussions from their employers. The resulting "chilling effect" is impermissible.

*Sandoval v. Rizzuti Farms, Ltd.*, No. CV-07-3076-EFS, 2009 WL 959478, at *2 (E.D. Wash. April 7, 2013) (internal quotations omitted); *see also Francois v. Mazer*, No. 09 Civ. 3275 (KBF), 2012 WL 1506054, at *1 (S.D.N.Y. April 24, 2012) (noting the chilling and prejudicial effect of disclosing immigration status).

And of course admission at trial would be far worse than permitting discovery, which the Court (as it did in this case) can severely restrict anyone's use of the information. The T-Visas and related documents should therefore be excluded. Fed. R. Evid. 403.

    B.    <u>The T-Visas and related documents are minimally relevant, if they are relevant at all, and their introduction would be unduly prejudicial.</u>

Signal posits two theories of relevance for the T-Visas and related documents: first, that Plaintiffs had a reason to fabricate allegations against Signal to obtain a T-Visa; and, second, Plaintiffs' receipt of a green card is relevant to contractual damages. (Doc. 235, pp. 5-7.) Each

theory suggests at best minimally possible relevance to the claims and defenses in this case, and, in the actual facts of this case, there is no relevance.

Signal argues that the T-Visas and related documents are relevant to show Plaintiffs' motive, based on its repeated argument that Plaintiffs fabricated their claims because receiving a green card as a result of obtaining a T-Visa can be life changing for Plaintiffs and their families. (Doc. 235, pp. 5-6.)  There is no evidence to suggest that Plaintiffs have misrepresented or exaggerated their experiences, however.  Signal apparently bases its argument on a passage from a book, which suggests that "any sane person" would "be tempted to lie." (*Id.*)  Signal's intent appears to be to use the T-Visas and related documents to paint Plaintiffs unfairly as liars, (*see id.*, p. 7), without any evidence to support its "motive" theory.  Signal's intended use of the documents would be unfairly prejudicial to Plaintiffs, especially in light of the non-existent basis for Signal's motive theory.

Signal also argues that the T-Visas and related documents might be relevant to an award of contractual damages – the theory apparently being that Plaintiffs did not suffer contractual damages, since they were ultimately able to obtain green cards.  (*Id.*)  Thus, even if Signal violated the law by defrauding, trafficking, or breaching contracts or agreements with Plaintiffs, there are no damages because, at the end of the day, Plaintiffs received what they bargained for – a green card.

That argument improperly implies that the jury should allow Signal to be enriched by Plaintiffs' performance under the contract, even though Signal failed to perform (and lied to Plaintiffs), because Plaintiffs independently found a way to improve their positions.  Signal's argument is foreclosed by equity and the collateral source rule.  *See, e.g.*, *Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. CIV.A. 12-1026, 2014 WL 4748571, at *14 (E.D. La. Sept. 23,

2014) ("Under the collateral source rule, 'a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution.'"); *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135, 1139 (Miss. 2002) ("a tortfeasor cannot mitigate its damages by factoring in compensation the plaintiff received from a collateral source other than the tortfeasor").  It would be even worse if a defendant were permitted to benefit from a collateral source available only because defendant itself behaved in a reprehensible manner.

      C.    <u>Introducing the T-Visas and related documents would create extraneous issues and unnecessary mini-trials.</u>

Admitting the T-Visas and related documents would confuse the issues in this case and mislead the jury.  Plaintiffs' current immigration status is not at issue:  Signal's tortious conduct towards Plaintiffs is.  The T-Visas and related documents would only muddy the waters and mislead the jury that Plaintiffs' current immigration status is somehow relevant to the issues in this case.  Plaintiffs are not seeking damages for any time period after they left Signal.  Whether Plaintiffs received T-Visas or green cards, are living and working in the United States, have family members living in the United States, and related issues have no bearing on Signal's conduct towards Plaintiffs.  The danger of confusing the issues and misleading the jury, therefore, substantially outweighs the slight possible relevance of the T-Visas and related documents, warranting exclusion of those documents.  Fed. R. Evid. 403.

Indeed, introducing the T-Visas and related documents would only serve to unduly delay the trial and waste the Court's time.  Signal would have the Court and jury follow it into its whimsical rabbit hole and engage in a mini-trial on whether Plaintiffs' allegations of human trafficking, fraud, and discrimination are part of an elaborate conspiracy to obtain T-Visas.  For instance, Signal's proposed evidence would initiate a mini-trial for each Plaintiff regarding what

8

was told to the United States government by the Plaintiff when obtaining his T-Visa, what standards the government used to evaluate that claim, and whether the government correctly decided that each Plaintiff had been trafficked. Allowing mini-trials on the T-Visas would bog down the trial and waste the time of all involved, while detracting from the presentation of the claims and defenses relevant to this case.

## CONCLUSION

Accordingly, Plaintiffs request that the Court order that Signal may not introduce evidence relating to Plaintiffs' T-Visas, related documents, and immigration status.

Respectfully submitted, this 12th day of March, 2015.

*/s/ Daniella D. Landers*
Daniella D. Landers (Texas Bar No. 24026260)
Sutherland Asbill & Brennan LLP
1001 Fannin Street, Suite 3700
Houston, Texas 77002-6760
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
daniella.landers@sutherland.com

John H. Fleming
Keith J. Barnett
Bryan M. Ward
Kurt Lentz
Travis J. Mock
Kara D. Ford
Heather Neimeyer
Mary Beth Martinez
(admitted *pro hac vice*)
Sutherland Asbill & Brennan LLP
999 Peachtree Street NE, Suite 2300
Atlanta, Georgia 30309-3996
Telephone: (404) 853-8000
Facsimile: (404) 853-8806

***ATTORNEYS FOR PLAINTIFFS***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2015, I electronically filed the foregoing **PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF T-VISAS, RELATED DOCUMENTS, AND IMMIGRATION STATUS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all ECF participants.

I further certify that on March 12, 2015, I served a true and correct copy of the foregoing document upon the below-named Defendants by depositing a copy of same in the U.S. Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Michael Pol
> Global Resources, Inc.
> c/o William P. Wessler, Esq.
> William P. Wessler, Attorney at Law
> 1624 24th Avenue
> Gulfport, MS 39501-2969

> Mr. Billy Wilks
> 9136 Heather Lane
> Moss Point, MS 39562

> */s/Daniella D. Landers*
> Daniella D. Landers

## **CERTIFICATE OF CONFERENCE**

This is to certify that on March 12, 2015, counsel for the *Joseph* Plaintiffs (Mr. Ward) met by telephone with counsel for the Signal Defendants (Mr. Keller) for the purposes of complying with the meet and confer requirement in Local Rule CV-7(h).  Counsel for both parties conferred in good faith on a series of evidentiary disputes, but concluded in good faith that discussions had conclusively ended in an impasse.

Therefore, counsel for the *Joseph* Plaintiffs explained that they intended to file a series of Motions in Limine.  Counsel for the Signal Defendants indicated that Signal intends to oppose the motions.  Counsel for the Signal Defendants similarly indicated that they intended to file a series of Motions in Limine, and Counsel for the *Joseph* Plaintiffs similarly indicated that they intended to oppose the motions.

*/s/ Daniella D. Landers*
Daniella D. Landers