**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **BIJU MAKRUKKATTU JOSEPH,** *et al.* | § § | |
| **v.** | § § | **1:13-CV-324** |
| **SIGNAL INTERNATIONAL L.L.C.,** *et al.* | § § § | |

**ORDER DENYING SIGNAL'S MOTION FOR SANCTIONS (DOC. NO. 235) AND
MOTION TO RE-DEPOSE THE PLAINTIFFS (DOC. NO. 242)**

This case is assigned to the Honorable Ron Clark, Chief United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to a Referral Order. (Doc. No. 4.) Pending before the undersigned are the following motions: "Motion for Rule 37 Sanctions" (Doc. No. 235), "Motion for Expedited Hearing" (Doc. No. 243), and "Motion and Memorandum in Support to Redepose Plaintiffs on T-Visa Evidence" (Doc. No. 242) all filed by Signal International, Inc., Signal International, L.L.C., Signal International Texas, G.P., and Signal International Texas, L.P. (collectively, "Signal"). The Plaintiffs oppose Signal's motions. (Doc. Nos. 251, 252.)

On October 15, 2014, the undersigned granted in part a motion to compel filed by Signal requiring the Plaintiffs to produce their T-visas and visa applications within seven days. (Doc. No. 148.) Signal seeks to have certain facts deemed established because it claims that the Plaintiffs did not produce these documents until March 4, 2015—over four months late—and also requests to re-depose each of the Plaintiffs for a half-day regarding these recently produced documents. Because Signal did not diligently pursue these documents, and therefore, bears much of the responsibility for not having these documents during the Plaintiffs' depositions and not receiving them until March, the undersigned finds that Signal is not entitled to the relief that it seeks.

## I. Background

A. <u>Factual Background</u>

In the aftermath of Hurricane Katrina, approximately 590 men, including the seventeen Plaintiffs in this case, were allegedly trafficked into the United States to provide labor for Signal's operations. (Doc. No. 64, pp. 2–4.) The Plaintiffs claim that the Defendants made false promises of "permanent work-based immigration to the United States," and that to take advantage of this promising opportunity, the Plaintiffs allegedly "plunged themselves and their families into debt . . . to pay mandatory recruitment, immigration processing, and travel fees . . . ." (<u>Id.</u> at p. 2.) After arriving at Signal's facility in Orange, Texas, the Plaintiffs were allegedly subjected to serious abuses, threatened with deportation if they left, and forced to live in substandard conditions. In addition, the Plaintiffs assert that they could not leave their jobs with Signal due to the large debts they incurred in their homeland.

The Plaintiffs allege that some or all of the Defendants violated the following federal statutes: (1) the Trafficking Victims Protection Reauthorization Act of 2003; (2) the Racketeer Influenced and Corrupt Organizations Act; (3) the Civil Rights Act of 1866; and (4) the Ku Klux Klan Act of 1871. (<u>Id.</u> at pp. 50–68.) In addition, the Plaintiffs assert causes of action for state-law fraud, negligent misrepresentation, and breach of contract against all of the Defendants. (<u>Id.</u>)

B. <u>Procedural History</u>

On September 5, 2014, Signal filed a motion to compel. (Doc. No. 127.) Among other things, Signal sought the Plaintiffs' T-visa and T-visa applications.[1] (<u>Id.</u>) The Plaintiffs

---

1. T-visas are visas that are available to victims of human trafficking, and allow a holder to stay in the United States for up to three years, and in some cases, may even lead to permanent residency. <u>See</u> 8 C.F.R. § 214.11.

opposed, arguing that requiring production of these documents "would impart a very real *in terrorem* effect on Plaintiffs and others attempting to exercise their rights under federal trafficking and employment laws." (Doc. No. 137, p. 1.) On October 15, 2014, the undersigned issued an order granting in part Signal's motion, and required that the Plaintiffs produce their T-visas and visa applications within seven days of the order. (Doc. No. 148, p. 21.) Both parties objected, and requested a "clarification" from the district judge. (Doc. No. 172) (the Plaintiffs requested that "the order should be clarified to prevent disclosure of highly sensitive, irrelevant materials"); (Doc. No. 188) (Signal "urge[d] [the] Court to modify the Order to clarify the relevant period of discovery"). On February 24, 2015, the district court overruled both parties' objections and stated that any "clarifications" of the order on the motion to compel should be addressed to the undersigned. (Doc. No. 228.) The parties sought no further clarification.

Six days later, on March 2, 2015, Signal filed a motion for sanctions, arguing that the Plaintiffs had not yet produced the required information and that this delay has caused "substantial prejudice to Signal's trial preparation." (Doc. No. 235.) Signal requests that nine "statements be deemed established for purposes of this litigation" and its attorneys' fees. (Id.) On March 4, 2015, the Plaintiffs produced their T-visas and visa applications. (Doc. No. 242, p. 3.) Then, on March 6, 2015, Signal filed another motion, this time requesting to re-depose each of the Plaintiffs for a half-day based on the recently produced documents. (Id.) The Plaintiffs oppose both of Signal's motions. (Doc. Nos. 251, 252.)

**II. Analysis**

A. Signal's "Motion for Rule 37 Sanctions" (Doc. No. 235)

Whether to impose sanctions is within the discretion of the court. See Haase v. Countrywide Home Loans, Inc., 748 F.3d 624, 630–31 (5th Cir. 2014). Here, Signal requests to have nine facts deemed established because the Plaintiffs failed to timely comply with the undersigned's order on Signal's motion to compel. While one available sanction for failing to comply with a discovery order is finding "that the matters embraced in the order or other designated facts be taken as established for the purposes of the action," such relief is not appropriate here. See FED. R. CIV. P. 37(b)(2)(A)(i).

The undersigned's order required that the Plaintiffs produce their T-visas and applications by October 22, 2014. (Doc. No. 148, p. 21.) Signal contacted the Plaintiffs on October 30, 2014 to inquire about the status of production because the Plaintiffs had not yet produced the required information. (Doc. No. 242, Ex. A.) On this same day, the Plaintiffs appealed the undersigned's order and requested that the district court reverse the order, or alternatively, clarify certain aspects of the order. (Doc. No. 172.) Signal's next correspondence regarding these documents was not until February 18, 2015. (Doc. No. 235, Ex. A.)

It is entirely unclear why there was such a delay given that Signal apparently knew that "a Rule 72(a) motion for reconsideration does not automatically stay an order." (Id.) (citing Tempay, Inc. v. Biltres Staffing of Tampa Bay, L.L.C., 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013)). Furthermore, based on the parties' objections, at the time of Signal's correspondence, there was some disagreement about exactly what needed to be produced. Signal's correspondence of February 18 began the dialogue, and the parties again conferred on February

23, at which time Signal "insisted that Plaintiffs move . . . for a stay if production were to continue to be withheld." (Doc. No. 252, p. 3.)  The Plaintiffs moved for a stay on February 24.  (Doc. No. 227.)  That same day, the district court overruled both parties' objections (Doc. No. 228), which in turn mooted the Plaintiffs' motion to stay.  (Doc. No. 234.)  The parties again conferred on February 26, at which time it appears that the disagreements over the scope of what had to be produced were resolved, and the Plaintiffs agreed to produce documents by March 2, and then on the 2nd, requested a two-day extension.  (Doc. No. 252, p. 4.)  It is unclear whether Signal expressly agreed to the March 2 deadline.  Given that Signal did not move for sanctions on February 26, but rather, waited until the day Plaintiffs requested an additional two days, it appears that Signal did not have too strong of an objection to the agreed upon March 2 deadline.

Signal argues that sanctions are warranted because the Plaintiffs' delay in producing these documents has caused "substantial prejudice to Signal's trial preparation." (Doc. No. 235, p. 4.) Based on the record, the undersigned is not persuaded.  At the outset, neither party is an innocent actor.  The undersigned's order *required* that the Plaintiffs produce documents on October 22, 2014.  The Plaintiffs did not move to stay their obligation until February 24, 2015.  (Doc. No. 227.)  Signal, however, also had an obligation to pursue its rights.  Signal sent one letter in October, and then waited several months before following-up.  If these documents are as critical to Signal's defense as it asserts, Signal should have been more zealous in compelling their production.  While Signal faults the Plaintiffs for adopting "a legally tenuous position in assuming that [the undersigned's] Order was effectively stayed pending Judge Clark's review," given that Signal took no action for several months after the Plaintiffs appealed, it certainly appears that *both* parties treated their objections as having this effect. (Doc. No. 235, p. 4.)

5

Accordingly, Signal's argument that the Plaintiffs are the ones who bear the *sole* responsibility for the late production of documents is incorrect.

Moreover, both parties requested a "clarification" of the undersigned's order. The district court put the onus back on the parties to work out their issues or re-brief them. (Doc. No. 228.) It appears that the parties reached an agreement on their issues, and in doing so, agreed that the Plaintiffs could have until March 2, 2015, to produce these documents, and the Plaintiffs actually produced them on March 4, 2015. Therefore, based on the parties' conduct, the Plaintiffs were two days late in producing these documents to Signal—not four months as Signal alleges—and such a delay does not warrant the imposition of sanctions.

Furthermore, Signal is overreaching in the facts it seeks to have established. See Compaq Computer Corp. v. Ergonome Inc., 387 F.3d 403, 413 (5th Cir. 2004) (noting that any sanction "must be specifically related to the particular 'claim' which was at issue in the order to provide discovery"). For example, Signal seeks to have deemed admitted that "each plaintiff lied and exaggerated about material facts in applying for and obtaining his T-visa" and that "[n]either Plaintiffs nor their representatives believed that Plaintiffs could obtain T-visas without lying and exaggerating about material facts with respect to each Plaintiffs' recruitment and work at Signal." (Id. at p. 7.) There is no basis in Signal's motion to compel, their requests for production, or the undersigned's order to have such facts admitted. Signal's request is so overreaching that it must be denied. Furthermore, given that the Plaintiffs have produced this information, it is better to have the evidence presented to the jury regarding these matters as opposed to having certain key facts established on account of being a few days late in producing documents.

6

The undersigned also finds that the award of attorneys' fees in not justified.  If a party fails to comply with a court's order regarding discovery, an award of attorneys' fees may be appropriate.  See FED. R. CIV. P. 37(b).  Rule 37(b)(2)(C) states: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  The undersigned finds that there are "other circumstances" making the award of sanctions unjust.  Both parties are to blame for the Plaintiffs' untimely production of their T-visas.  The Plaintiffs had no basis in law not to produce the documents, but Signal failed to zealously pursue them.  As discussed above, Signal sent one letter in October 2014, and took no further action until February 2015.  Moreover, it appears that there was an agreement that the Plaintiffs could produce these documents on March 2, and when they requested an additional two days (which is insignificant given that Signal had already waited four months), Signal sought sanctions.  Had the Plaintiffs shown a pattern of seeking extensions or refusing to produce documents, then an award of attorneys' fees might be appropriate, but that is not the case here.  The parties were fully communicating regarding these issues, and the Plaintiffs' request of an additional two days is reasonable.  Therefore, the undersigned finds that "other circumstances" exist making the award of attorneys' fees unjust.

B. Signal's "Motion and Memorandum in Support to Redepose Plaintiffs on T-visa Evidence" (Doc. No. 242)

Before the Plaintiffs filed this case, Signal was well aware that a contentious issue would be the production of the Plaintiffs' T-visas and visa applications.  The court in *David*—a parallel case involving Signal and nearly identical allegations of human trafficking—twice addressed the

discoverability of this information. (Doc. No. 315, David v. Signal Int'l, L.L.C., 2:08-cv-1220 (E.D. La. Jan. 30, 2009)) (requesting that a protective order be issued); (Doc. No. 778, David v. Signal Int'l, L.L.C., 2:08-cv-1220 (E.D. La. July 22, 2010)) (moving to compel production of the plaintiffs' T-visas). Initially, the court entered a protective order that precluded all discovery into the plaintiffs' immigration status. See David v. Signal Int'l, L.L.C., 257 F.R.D. 114, 125–26 (E.D. La. 2009) ("[T]his Court can only conclude that any inquiry into plaintiffs' current immigration status, current residence, and/or post-termination employment history will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they may have had to prosecute their pending claims."). A little over a year later, Signal moved to compel the production of the plaintiffs' T-visas and applications. Signal's motion was granted in part—largely because it appears that the *David* plaintiffs offered a compromise—and the court ordered the production of redacted statements that were attached to the plaintiffs' T-visa applications. Signal's request for the actual visas and applications was denied. (Doc. No. 854, David v. Signal Int'l, L.L.C., 2:08-cv-1220 (E.D. La. July 22, 2010)).

The Plaintiffs filed this action on May 25, 2013. Therefore, from the moment that this case was filed, Signal should have known—or at least strongly suspected—that there would be an issue relative to the production of the Plaintiffs' visas. The first scheduling order required discovery to be completed by July 25, 2014, which was subsequently extended to October 17, 2014. (Doc. Nos. 61, 105, 122.) Therefore, Signal had ample time to persuade this court that the Plaintiffs should be required to produce their T-visas and applications (an endeavor in which Signal was ultimately successful) *before* seeking to depose the Plaintiffs.

8

Signal, however, did not immediately seek written discovery from the Plaintiffs. Rather, Signal waited over a year to serve written discovery.[2] On July 22, 2014, Signal received responses from the Plaintiffs indicating that they were not going to produce visa related information. (Doc. No. 127, Ex. 2.) Signal then waited over a month before filing its motion to compel. (Doc. No. 127.) In other words, Signal was not particularly proactive (though they complied with the second amended scheduling order) in seeking this information.

What most persuasively demonstrates that Signal's request to re-depose the Plaintiffs should be denied is that Signal scheduled—and took—three of the Plaintiffs' depositions *before* its motion to compel was even ripe. The first deposition was scheduled for September 19, 2014, and Signal's motion to compel was not fully ripe until September 29, 2014.[3] (Doc. No. 242, Ex. D) (Joy Varkey's deposition started on September 19, 2014); (Id., Ex. E) (Philip Baby's deposition began on September 22, 2014); (Sojan Kaliyadan's deposition began on September 26, 2014). The fact that Signal was willing to take several depositions before its motion to compel was ripe—let alone decided—demonstrates that Signal did not believe that having the Plaintiffs' visas in-hand was as vital as it now argues. Had Signal truly needed these documents to properly depose the Plaintiffs, Signal should have served discovery earlier, which would have allowed it to

---

2. Assuming that the Plaintiffs' responses were timely, and there is no indication in the record that they were not, then Signal's requests for production were served more than one year after the Plaintiffs filed this case. See FED. R. CIV. P. 34(b)(2)(A) (requiring responses to requests for production be served within thirty days).

3. September 29, 2014 is the date that Signal filed its reply. (Doc. No. 140.) Arguably, the motion was ripe after the Plaintiffs filed their response on September 22, 2014, which is still *after* the second deposition began. (Doc. No. 137); LOCAL RULE CV-7(f) ("The court need not wait for the reply or sur-reply before ruling on the motion."). Furthermore, it is unrealistic to believe that a court, dealing with the rather novel issue of whether the *in terrorem* effect can shield a party from having to produce immigration related documents in a human trafficking case, will rule on the motion instantaneously. Therefore, while some of the Plaintiffs' depositions were taken before Signal's motion was ripe, *all* of them were taken before the court could reasonably have been expected to issue an order.

have its motion to compel filed and decided *before* scheduling and taking these depositions.[4] The general rule is that a party may only take a witness's deposition once. See FED. R. CIV. P. 30(a)(2)(A)(ii) (noting that leave of court is required if "the deponent has already been deposed in the case"). Therefore, because Signal decided to take the Plaintiffs' depositions without these documents, it should have known that it would have no absolute right to re-depose the Plaintiffs.

In addition, the undersigned agrees with the Plaintiffs' assertion that Signal "has pointed to no new information in the written T-visa materials" that warrants re-deposing the Plaintiffs. (Doc. No. 251, p. 3); (see also id. at p. 9) ("Signal has not suggested, based on any of the documents produced relating to the T-Visas, how any testimony from the Plaintiffs might be necessary."). At best, Signal alleges that "the testimony of the Plaintiffs *could* reveal additional information." (Doc. No. 272, p. 2) (emphasis added). Signal also references some additional communications that were part of the Plaintiffs' visas, but fails to clearly articulate what it believes it could learn from these or why this justifies re-deposing the Plaintiffs. (Id.)[5] Furthermore, the undersigned finds some merit to the Plaintiffs' contention that these depositions are aimed at harassing the Plaintiffs. It should not take a half-day as Signal requests (or three and a half hours), even with translators, to discuss a handful of recently produced documents. The only plausible explanation for why Signal needs this much time is that it wants to delve into issues beyond what is

---

4. Signal's reply highlights why it should have been more diligent in seeking written discovery. Signal claims that it needs to re-depose the Plaintiffs because their testimony "could reveal additional discovery avenues unknown to Signal." (Doc. No. 272, p. 2.) It is reasonable to expect that discovery early in the case may lead to new issues, that is why the parties had a year to conduct discovery. Signal, however, chose to wait until close to the end of the discovery period to serve discovery. To the extent there are "additional discovery avenues," the time to explore them has long passed.

5. Moreover, this is a new argument that was raised in a reply. Therefore, to the extent that Signal is even claiming that these newly discovered communications entitle it to re-depose the Plaintiffs, this argument is not properly before the court. Furthermore, Signal has provided no detail on what these "third party affidavits and communications" contain, and therefore, even if this argument were before the court, Signal has not provided the court with enough information to intelligently decide whether this would warrant re-deposing the Plaintiffs.

contained in the Plaintiffs' T-visas and visa applications. Because Signal has failed to articulate what newly discovered information warrants re-deposing the Plaintiffs, coupled with the fact that Signal initially chose to take these depositions without having hard copies of the Plaintiffs' T-visas and visa applications, the undersigned finds that Signal's request to re-depose the Plaintiffs should be denied.

It also appears that Signal is trying to challenge opposing counsel's instructions to the Plaintiffs not to answer certain questions during their depositions based on the *in terrorem* effect. (Doc. No. 242, p. 4) (arguing that "[u]nequivocally, the record indicates that the parties contemplated the possibility of redeposing the Plaintiffs"). This, however, is a different issue than whether the recent production of documents requires re-deposing the Plaintiffs. (Doc. No. 242, p. 3) ("Signal was unable to question Plaintiffs on these highly relevant documents."); (Id. at p. 7) (seeking to re-depose the Plaintiffs "on topics limited to T-visa applications and affidavits"); (Doc. No. 242, Ex. B) ("Signal requests consent to redepose each Plaintiff on the T-visa applications and unredacted affidavits . . . ."). As an initial matter, the instruction not to answer was likely improper given that there is no "privilege" (as that term is understood in the Federal Rules) related to the *in terrorem* effect, there was no protective order in place *in this case* (though there were in other cases), and that the Plaintiffs did not move for a protective order until September 22, 2014, which was the fourth day of depositions. See FED. R. CIV. P. 30(c)(2) ("A person may instruct a deponent to not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).")

Signal, however, had options at the time of the depositions to address opposing counsel's objections. First, Signal could have insisted on getting answers to its questions, subject to the

11

objections, and then allowed the court to rule on the objections. Instead, there is no record of what questions Signal intended on asking because Signal agreed not to ask them. Second, Signal could have received an immediate ruling on this issue by calling the District's discovery hotline. See LOCAL RULE CV-26(e). The fact that a motion to compel was pending that contained some overlapping issues does not mean that parties could not have gotten an immediate ruling on the propriety of the Plaintiffs' objections. In other words, Signal's motion to compel seeking certain documents did not necessarily preclude all questions relating to the Plaintiffs' immigration status.

Third, if Signal believed that their questions were proper (or the instruction was improper), Signal should have moved much earlier to re-depose the Plaintiffs. Instead, Signal waited five months to raise this issue. It really appears that Signal is regretting not pushing harder to have the Plaintiffs answer its questions regarding their immigration status, and is using these recently produced documents to open the door to a broad range of questions that it failed to get answers to the first time they deposed the Plaintiffs. However, whether Signal was able to question the Plaintiffs regarding certain documents—which is the only real change in circumstance since the deposition—is a different issue than whether Signal got all its questions at the depositions answered.

After considering all the circumstances, the undersigned finds that re-deposing the Plaintiffs is not warranted. If Signal truly believed that questioning the Plaintiffs on their T-visas and visa applications was so critical to its case, it could have taken steps earlier to ensure that it could ask the questions it wanted. Instead, Signal waited until late in the discovery period to serve written discovery, waited several weeks before filing a motion to compel, and took depositions with a motion pending. It actually appears that Signal is regretting its failure to take

12

action on opposing counsel's instructions not to answer certain questions during depositions, and is using the recently produced documents as a way to re-ask its questions. Signal, however, had options at that time of the depositions to ensure that it received answers to its questions, or at the very least, should have raised this issue earlier. In the end, Signal now has the documents it successfully sought through its motion to compel. Signal is free to cross-examine any of the Plaintiffs on these documents at trial, subject to any ruling by Chief Judge Clark.

### III. Conclusion

Signal's argument that the "Plaintiffs' own actions created a world where Defendants received long requested discovery on the eve of trial" is an exaggeration. (Doc. No. 242, p. 1.) Signal bears much of the responsibility for any alleged prejudice it has suffered by receiving the Plaintiffs' T-visas and visa applications just weeks before trial. It should also be repeated that the Plaintiffs' hands are not clean either because they failed to produce the documents as ordered by the undersigned. A ruling on a nondispositive motion by the undersigned should not be treated as an advisory opinion. Sanctions, however, are not warranted because even though the Plaintiffs failed to timely comply with the undersigned's order on Signal's motion to compel, Signal did not actively pursue its right to this information. Moreover, the Plaintiffs produced their T-visas and applications March 4—just two days after an agreed upon deadline. As for re-deposing the Plaintiffs, Signal chose to depose the Plaintiffs knowing that it would not be able to question them regarding their T-visas and applications. Therefore, they have no right to re-depose the Plaintiffs about these documents at this time.

Accordingly, Signal's "Motion for Rule 37 Sanctions" (Doc. No. 235) and "Motion and Memorandum in Support to Redepose Plaintiffs on T-visa Evidence" (Doc. No. 242) are

**DENIED**. Furthermore, Signal's "Motion for Expedited Hearing" (Doc. No. 243) is **DENIED AS MOOT**.

SIGNED this 17th day of March, 2015.

_____
Zack Hawthorn
United States Magistrate Judge